## MIDDLE GEORGIA AND ATLANTIC RAILROAD COMPANY *v.* REYNOLDS, next friend, etc.

*Atkinson, J.*—1. That the court on the trial of an action for personal injuries rejected evidence offered by the defendant to show that certain bandages were removed from a broken limb of the plaintiff a week sooner than the attending physician had directed, is not cause for a new trial, "the defendant contending" that had the bandages remained another week, the pain and suffering of the patient would have been materially less-

ened, but not offering to prove affirmatively that such would have been the result.

2. The pain actually suffered was the same, no matter who paid the physician's bill, and, therefore, the fact that it was paid by the defendant had no relevancy upon this particular question.

3. The charge of the court as to the degree of diligence required of the defendant was sufficiently full and' accurate without giving the request relating to this subject.

4. An employee of a railroad company, not on duty, but simply being transported upon a locomotive, is not required to look ·out for obstacles on the track, and his failure to do so is not imputable to the company as negligence; but a request embodying this principle was properly refused, when it contained in addition, or could reasonably be construed as containing, a statement by the court to the effect that another employee actually on duty upon the locomotive was exercising due diligence.

5. There was no error in rejecting evidence. The verdict was reasonable in amount and fully warranted; and the ground of the motion for a new trial relating to newly discovered evidence was without merit.                *Judgment affirmed.*

November 9, 1896.  Argued at the last term.

Action for damages.   Before Judge Hart.   Putnam superior court.   September term, 1895.

James Reynolds, as next friend of his minor son William, sued the railroad company for damages, alleging:   On April 19, 1894, defendant's engine struck said minor, knocking him violently from the track, breaking the thigh bone of one of his legs, lacerating his head and face, injuring his spinal column and body; in consequence of which he suffered excruciating pain for many weeks, his health has been permanently impaired, his body disfigured, and his capacity to earn money in after life been diminished one half, if not entirely destroyed.   At the time of the injury he was only 19 months old.   The injury occurred at a place where the child, who was then standing or walking on the track, could have been seen four hundred yards from the approaching engine which struck him.   If the engineer had used ordinary care he could easily have

stopped the engine after coming in sight of the child, but he was careless in not looking ahead and in taking no steps to reduce the speed of the train until it was too late. The injury occurred within 200 yards after the train had passed a public crossing, and defendant's employees were negligent in not blowing for the crossing and in not checking the speed of the train while approaching the crossing. Had they observed the law, the train would have been so under ·control as to have been readily stopped before the child was reached. ' Defendant's agents were negligent in running the train at an unusual and reckless rate of speed. The ·engine was so defective as to render it difficult to check its ·speed or stop it. Had an engine in suitable condition been in use it could have been stopped in ample time to have prevented the injury. Defendant was grossly negligent in not having on the engine and train the best appliances for ·checking speed. It had in use no air-brakes, but only hand-brakes. There were no means of signal between the conductor and the engine. Had proper machinery been in use the injury could readily have been avoided.

Plaintiff obtained a verdict for $500. Defendant's motion for a new trial was overruled, and it excepted. The motion alleges, beside the general grounds, that the court erred:

In refusing to allow Dr. E. Y. Walker and the physician who attended the injured child and who set and dressed his broken limb, to testify that after applying plaster dressings, before the time when said bandages should have been removed, and contrary to his positive orders and instructions, .said bandages were removed, to wit one week before he had been instructed to do so. Movant contends that had :said testimony been admitted, it would have shown that the injured child would have made a quicker and safer recovery and would not have suffered so much pain.

In refusing to permit defendant to show that it had paid .all the doctors' bills for treating said injured child; which

testimony would have shown that defendant had done all in its power after the injury to lessen and prevent pain and suffering, and did in fact materially lessen the same.

After charging: "If the engineer fails to comply with these requirements [referring to blowing whistle and checking train on approaching a public crossing] and a stranger is discovered on the track, not at a public crossing, the company through its agents must use all ordinary precaution to prevent an injury to the stranger; and if after using all ordinary precaution to prevent an injury to the stranger such injury does occur, the company will not be liable," in refusing a request to charge the following: "If the stranger who is so discovered is an adult or person of sound mind and discretion, and laboring under no physical infirmity or disability, the company's agents may presume that he will get out of danger; but if the stranger is a child and is known by the company not to be of such age and discretion, and unable to realize his danger, or to take the usual means to protect himself against such danger, then the company may not presume that it will get off the track, and the company must use all ordinary means to check its train and prevent any injury to such stranger; the requirements in the latter case being upon the company to the same extent as in the case of cattle who are discovered upon the track.  In the case of a child who appears upon the track not at a public crossing, the company owes it no higher degree of diligence than to use all ordinary, and not extraordinary, means to prevent an injury to it."

The evidence having shown that W. R. Bowles, an employee of the company but not on duty on the day of the injury, was on the engine when the child was struck and was being transported by the company from Covington to his home in Eatonton, and counsel for the plaintiff having argued to the jury that it was negligence upon the part of the company if this employee could have seen the child before it was actually seen, but did not see him because he

was not on the lookout, the court erred in refusing a request to charge the following: "An employee of a railroad company, who is not on duty at the time of an accident whereby one is injured by the running of the company's cars, cannot bind the company by any failure upon his part to discharge the work or duty of another employee who at the time of the accident is on duty and engaged in the work for which he is employed. If a fireman of the company who is not on duty is being transported from one place to another on the company's engine, and his presence upon the engine is simply for the purpose of being transported, fails to keep a lookout for persons on the track, his failure so to do is not negligence upon the part of the company, it having at the time a regular fireman upon the engine who was discharging the usual duties of his employment."

Also, error in refusing to allow defendant to prove that D. B. Rogers, a witness for plaintiff, was being prosecuted under an indictment for larceny at the instance of defendant; the evidence being offered for the purpose of showing the interest of the witness.

And since the trial defendant has discovered that the testimony of Rogers is not only untrue, because no engine could have been used on a railroad track in the condition described by him of this engine, but that the engine immediately before the accident had been thoroughly repaired, especially so as far as its power of taking and holding steam was concerned. Defendant has also discovered, by reason of an examination by an expert machinist, that the engine is in perfect condition as far as taking and holding steam is concerned. It was impossible from the allegation in the plaintiff's petition to have had reasonable premonition of the peculiar turn Rogers' testimony in the case would take, the petition having laid stress mainly on the absence of air-brakes as the cause of the accident. Defendant knew that its engine was defective in certain particulars, but did

not know, and had no means of deriving from the petition, that it would be claimed that there were any defects as far as its power to receive and properly hold steam when given by the engineer. In support of this ground movant produced the affidavit of G. W. B. Bozeman: Am a practical machinist and have been for fifteen years. I repaired engine No. 4 soon after it was brought here. Repaired the steam cylinders, and new pistons and rings were put on. Was just before the accident and I remember the fact well, because the air-pump was taken off at the time and sent to Augusta for repairs. As to its ability to take and hold steam, it was in excellent condition at the time of the accident, and there were no defects at all in its ability to use its steam. It is an especially quick engine and will start and stop promptly.—Also, affidavit of J. B. Moore: Am a practical machinist and have been for 25 years, and have been a locomotive engineer for 11 years. There is no defect in the valve motion or cylinders. It uses steam properly and promptly. The valve motion and drivers. are properly suited for engine passenger service. It is an especially quick engine, and will respond readily to position of lever. There are no defects that will hinder the engine from starting or stopping readily by steam.

*W. B. Wingfield, J. S. Turner* and *M. A. Lewis,* for plaintiff in error.

*W. F. & H. A. Jenkins* and *H. T. Lewis,* contra.