[No. 10855.    Department Two.    September 25, 1913.]

EXCHANGE NATIONAL BANK OF SPOKANE, *Respondent*, v.
RALPH Y. HUNT *et al., Appellants*.[1]

GUARANTY—CONTINUING GUARANTY — REVOCATION — DEATH.    The rule that a continuing guaranty is revoked as to subsequent advances by notice of the death of the guarantor has no application where there were no subsequent advances after the death of the guarantor, but merely subsequent renewal notes evidencing the indebtedness.

GUARANTY—DISCHARGE—NEGOTIABLE INSTRUMENTS LAW—APPLICATION.    Upon the continuing guaranty of an existing loan and of renewals thereof, and not merely of the instrument evidencing it, Rem.

[1]Reported in 135 Pac. 224.

17—75 WASH.

& Bal. Code, § 3509, providing that an intentional cancellation by the holder shall constitute payment of a negotiable instrument, has no application; hence the cancellation of a renewal note does not discharge the guarantor.

SAME. Upon the guaranty of an existing loan, and not merely of the instrument evidencing it, Rem. & Bal. Code, §§ 3510, 3582, relating to the discharge of and defining secondary liability upon negotiable instruments, have no application.

SAME—DISCHARGE—PAYMENT—NOTE. The taking of a renewal note for a preexisting liability does not constitute payment of the debt nor discharge a continuing guaranty of the liability itself.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered February 20, 1912, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Scott & Campbell* and *Graves, Kizer & Graves*, for appellants.

*Happy, Cullen, Lee & Hindman*, for respondent.

MAIN, J.—The purpose of this action is to recover upon a written guaranty. The facts are not in dispute, and so far as here material, are substantially as follows: On May 7, 1908, the Spokane Electric Supply Company, a corporation, desired to borrow $10,000 from the plaintiff; and the plaintiff agreed to make the loan if William Huntley, C. W. Hunt, and others, would guarantee its payment. Thereupon, the following instrument was executed:

"This agreement witnesseth, Whereas, the undersigned are the principal stockholders of the Spokane Electric Supply Company, a corporation; and

"Whereas, said company is at present indebted to the Exchange National Bank of Spokane in an amount aggregating ten thousand dollars ($10,000.00); and

"Whereas, the undersigned are desirious of protecting said bank on account of said loans, and on account of any renewal or renewals thereof, and on account of any further or other loans made by said bank to said company;

"Now, therefore, in consideration of the premises, we, the undersigned, C. W. Hunt, I. G. Hunt, Wm. Huntley, and

L. M. Simpson, do hereby jointly and severally guarantee any and all existing loans made by the said The Exchange National Bank of Spokane to the Spokane Electric Supply Company and any renewal or renewals thereof, and any further loans that may be made to it to the aggregate amount of Ten Thousand Dollars ($10,000.00), and this guarantee shall remain in full force and effect until written notice to said bank by the undersigned to the contrary.

"Dated May 7th, 1908, at Spokane, Washington.

> "Wm. Huntley
> "L. M. Simpson
> "I. G. Hunt
> "C. W. Hunt."

A note was given by the supply company to the plaintiff for the money borrowed, and such note was, from time to time, renewed. On March 7, 1910, the supply company executed and delivered to the plaintiff its promissory note for $10,000, due three months after date. On April 16, 1910, C. W. Hunt, one of the guarantors, died. The defendants in this action are the executors of his last will and testament. On September 17, 1910, the supply company paid the interest then due on the note of March 7th, and executed and delivered to the plaintiff another note for the same amount payable upon demand. The note of March 7th was surrendered by the bank, and across its face by rubber stamp it was marked "paid." At the time of the taking of the demand note, the bank had knowledge of the death of C. W. Hunt. On November 2, 1910, the plaintiff presented to the defendants, as executors, a claim against the estate of C. W. Hunt, deceased, in which was set out a copy of the note of September 17th, and it was averred that a demand had been made upon the supply company for payment, but that no payment had been made. The claim prayed for an allowance against the estate in the sum of $10,000, together with interest thereon from September 17th. The claim was rejected. The present action was then instituted to recover upon the written guaranty. Judgment was entered for the amount of the claim and interest. The defendants appeal.

The sole question to be determined is, did the giving of the demand note on September 17th and the surrendering up of the note of March 7, 1910, discharge the Hunt estate from the guaranty executed on May 7, 1908.

The general rule is, that a continuing guaranty, such as the one here in question, is revoked as to subsequent advances by notice of the death of the guarantor, unless there is express provision to the contrary. In 1 Brant, Suretyship and Guaranty (3d ed.), § 152, the rule as there stated is:

"A continuing guaranty, in the absence of express provision, is revoked as to subsequent advances by notice of the death of the guarantor."

This rule, however, is inapplicable to the facts in the present case, for the reason that the recovery here sought was not for money which had been advanced subsequent to April 16, 1910, the date of the death of C. W. Hunt.

Reliance is also placed upon Rem. & Bal. Code, § 3509 (P. C. 357 § 237), (being a section of the negotiable instruments act), which provides:

"A negotiable instrument is discharged—

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3) By the intentional cancellation thereof by the holder;

"(4) By any other act which will discharge a simple contract for the payment of money;

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

By this section a negotiable instrument is discharged when there is an intentional cancellation thereof by the holder, or the principal debtor has become the holder thereof at or after maturity in his own right. The contract of guaranty upon which the action is based did not guarantee the payment of a negotiable instrument, but did in terms guarantee any and

all existing loans and any renewals thereof, not to exceed the sum of $10,000. Had the guarantors undertaken to guarantee the payment of a promissory note, the section of the statute quoted would doubtless be applicable. There is a difference between an undertaking which guarantees a loan and one which guarantees the payment of a negotiable instrument. The former covers the debt; the latter the evidence thereof. From the facts already stated, it appears that the debt existing at the time of the death of C. W. Hunt had in no particular been paid, except the interest thereon. The renewal demand note of September 17th did not extinguish the obligation. The language of the guaranty expressly covers the obligation and not the evidence thereof. The Hunt estate was not discharged by the giving of the demand note.

Our attention is called to Rem. & Bal. Code, § 3510 (P. C. 357 § 239), which provides when a person secondarily liable on an instrument is discharged; and also to § 3582 (P. C. 357 § 385), which defines primary and secondary liability upon negotiable instruments. But these sections are not pertinent to the present inquiry for the reasons already stated.

The question then is, did the taking of the promissory note for a preexisting liability which was covered by the guaranty, constitute a payment of the debt, and thereby release the guarantors? The rule is that the taking of a promissory note for an antecedent liability does not constitute a payment of the debt in the absence of an agreement to that effect, or evidence that such was the intention of the parties. *London & S. F. Bank v. Parrott*, 125 Cal. 472, 58 Pac. 164, 73 Am. St. 64; *Wadsworth v. Allen*, 8 Grattan 174, 56 Am. Dec. 137; *Wise v. Miller*, 45 Ohio St. 388, 14 N. E. 218; *Oliphant v. Church etc.*, 19 Pa. St. 318; *Canadian Bank of Commerce v. Sesnon Co.*, 68 Wash. 434, 123 Pac. 602.

In the case last cited, it is said:

"The contention that the indebtedness of the Kimball Company to the bank is paid is also without foundation. It is based on the fact that the indebtedness was originally repre-sented by overdrafts and was afterwards put into the form of negotiable promissory notes. But this did not constitute a payment as between the parties. It changed the manner in which the debt was evidenced, but the debt continued to ex-ist nevertheless."

The judgment will be affirmed.

CROW, C. J., ELLIS, and FULLERTON, JJ., concur.