24482. SULTER *v.* CITIZENS BANK & TRUST CO.

DECIDED SEPTEMBER 21, 1935.

*Gazan, Walsh & Bernstein,* contra.

MacINTYRE, J. The Citizens Bank and Trust Company filed suit against the estate of Mrs. Bertha Schroder, deceased, on a certain contract of guaranty as follows: "For a valuable consideration to the undersigned in hand paid by you, the undersigned hereby guarantees to you the payment of any and all debts and/or liabilities of Martin Schroder & Co., incurred prior to the signing of this guaranty and now outstanding, or which are now due or which may be from time to time hereafter created, contracted, or incurred, however and in whatever manner the debts or liabilities of Martin Schroder & Co. to you may have been or may be created, contracted, incurred, or evidenced; also any and all renewals, in whole or in part, of any and all obligations, present or future, of Martin Schroder & Co. This guaranty is and shall be an open, unconditional, and continuing one to the extent, at any and all times, of $10,000.00, and shall not be considered as wholly or partially satisfied by the payment at any time of any sum of money for the time being due on any debt or liability, and shall stand as an absolute, unconditional, and continuing guaranty at all times up to amount named, until ten days after written revocation by undersigned has been received by you; but said revocation shall not affect this guaranty as to any debt or liability existing prior to the expiration of said ten days. The undersigned agrees that you may grant time or other indulgence to or compound with Martin Schroder & Co., or any person or persons, partnership, or corporation, liable on any bill, note, or other paper or obligation or guaranty held by you, without affecting or impairing this guaranty; and any and all amounts received by you may be applied as payments in gross, without any right on the part of the undersigned to stand in your place, until you have received the full amount of

all your claims against Martin Schroder & Co., which are covered by this guaranty. And for the consideration aforesaid the undersigned hereby waives all notice of the acceptance of this guaranty or the beginning or ending of credit which you may have given or may give in the future to Martin Schroder & Co., under this guaranty; also notice, demand, protest, and notice of protest, and agrees that suit may be entered by you against the undersigned in the same action with Martin Schroder & Co., or without joining Martin Schroder & Co., and without first exhausting your remedies against Martin Schroder & Co., or any other party. When signed by more than one person this guaranty is joint and several."

The plaintiff alleged that Mrs. Schroder died on June 23, 1933, and that at the time of her death Martin Schroder & Co. were indebted to plaintiff in the sum of $7,560, guaranteed by said contract and evidenced by four promissory notes set out and described in the petition; that since the death of Mrs. Schroder, Martin Schroder & Co. have paid to plaintiff the sum of $1480; and that there remains a balance of $6080 due plaintiff by reason of said contract of guaranty. Defendants answered, in effect, that the contract of guaranty was executed, but that all the indebtedness guaranteed therein had been paid and discharged by reason of the fact that on August 23, 1933, two months after the death of Mrs. Schroder, the plaintiff received from Martin Schroder & Co. a demand note for $7080, the proceeds of which note were credited to the account of Martin Schroder & Co., and thereupon Martin Schroder & Co. gave to plaintiff a check for $7720.94, which check paid the entire amount due, principal and interest, on the four notes; that this note was a new obligation of Martin Schroder & Co., was accepted as such, and after the death of the guarantor was discharged by the acceptance of the demand note under section 103-202 of the Code of 1933, which amounted to a change in the obligation, which could not be made binding on guarantor after the death of the guarantor, and the acceptance of the demand note amounted to a discharge of the surety or guarantor. It was also pleaded that such demand note, by an oral understanding of the parties, was in effect a contract of extension for a definite time.

In the evidence and agreed statement of facts the contract of guaranty was admitted, as well as the date of the death of Mrs. Schroder, and the facts that Martin Schroder & Co. were indebted

to the plaintiff on the four notes described, that on August 23, 1933, Martin Schroder & Co. executed and delivered to the plaintiff a demand note for $7080, and that on that date Martin Schroder & Co. gave to the plaintiff a check for the total amount of principal and interest due on the four notes, amounting to $7720.94 and had credited to its account the amount of the demand note, without which credit as a deposit with the plaintiff Martin Schroder & Co. would not have had sufficient funds to pay the check of $7720.94. The plaintiff retained the old notes of Martin Schroder & Co., all of which were given to plaintiff in Mrs. Schroder's lifetime, as collateral security upon the demand note, which notes were described in the demand notes as collateral for the same. After the making of the demand note there was paid on said indebtedness $1,000 principal and the interest due thereon, leaving a balance due of $6080. The vice-president of the bank testified that Martin Schroder gave his check, and the amount of the demand note was placed to his credit. Without this credit his check would not have been good. "This arrangement was made for the purpose of having in the bank a paper that was not past due. Martin Schroder clearly understood the arrangement, and that we were to hold the old notes which were guaranteed by his mother. This demand note was really a memorandum." At the conclusion of the evidence the court directed a verdict for the plaintiff.

The general rule is that a guaranty, continuing in its nature and based upon a divisible consideration, such as the one here in question, is revoked as to subsequent advances by notice of the death of the guarantor, unless there is an express provision to the contrary. 1 Brandt Suretyship & Guaranty (3d ed.) § 152. The question presented is whether the obligation guaranteed was paid by the transaction of August 23, or whether the transaction of August 23 amounted to a novation of the contract or such renewal as would discharge the guarantor. The plaintiff in error contends that the original indebtedness evidenced by the four notes had been paid, that the evidence at least warranted submission of that issue to the jury, and that the direction of the verdict for the plaintiff was error. Did the bank by the transaction of August 23 accept payment of the obligation represented by the four notes which were guaranteed under the contract, or did this transaction amount to a renewal of the obligation, and did the trial judge err in direct-

ing that both questions be answered in the negative? If the transaction amounted to a payment, the case was at an end. It would be true, where nothing else appeared, that the giving of a check for the amount due by the principal, which check was cashed, would authorize a finding of the payment of the four notes and the obligation they represented. In the present case the notes claimed to have been paid were not surrendered, but were retained by the holder, and the maker signed an agreement or demand note contemporaneously with the giving of the check, reciting that the notes claimed to have been paid were retained by the holder as collateral security, and thus in effect stated that the maker's obligation was not discharged but was still in force and effect. We can arrive at no conclusion, from such a state of admitted facts and uncontradicted evidence, other than that there was no discharge from the original indebtedness, and that the transaction involved the same and not a new or different indebtedness, although such obligation was evidenced by a demand note as well as the past-due notes, and although, technically speaking, personal property can not be assigned or pledged unless title be placed in the assignor, and, "as a general rule, one personal obligation of a debtor can not become a pledge or collateral for another obligation of the same debtor." 49 C. J. 903. The reason for the rule is that "a debtor's own personal obligation is no part of his personal property or assets." International Trust Co. v. Union Cattle Co., 2 Wyo. 803; Jones v. Sedalia National Bank, 13 Fed. 86; Dies v. Wilson County Bank, 129 Tenn. 89 (165 S. W. 248, Ann. Cas. 1915A, 1090). Yet, where notes fall due and the maker delivers to the holder new notes in the form generally known as *collateral* notes, stipulating that the old indorsed notes are collateral security for the same indebtedness represented by the new notes, and the old notes are retained by the holder, the indorser is not discharged. *Kalmon* v. *Scarboro,* 11 *Ga. App.* 547 (75 S. E. 846) ; *Scarboro* v. *Kalmon,* 13 *Ga. App.* 28 (78 S. E. 686) ; Federal Trust Co. *v.* Central Trust Co., 244 Mass. 204 (138 N. E. 562) ; Merchants Banking Co. *v.* Jones, 95 Maine, 335 (50 Atl. 48, 85 Am. St. R. 412). Under the express contract the maker was not discharged by the new note in the present case.

We do not think there was any evidence to show that there was any extension of the original obligation for a definite time, and

that therefore the taking of a demand note would not amount to a renewal of the obligation, so as to bar or discharge the surety or guarantor thereon. It will be recalled that this is not an action on the notes as such, but is an action on the indebtedness which is evidenced by the notes. The indebtedness is guaranteed by the contract, and the notes are merely evidences of the indebtedness so far as the guarantor is concerned. The guaranty attaches to the indebtedness, and not to the note. "There is a difference between an undertaking which guarantees a loan and one which guarantees payment of a negotiable instrument. The former covers the debt; the latter the evidence thereof." Exchange National Bank v. Hunt, 75 Wash. 513 (135 Pac. 224). Therefore if the debt which was evidenced by the notes was intended to be extinguished by the contract and note made on August 23, the liability of the guarantor would be at an end, irrespective of the retention by the bank of the notes evidencing the indebtedness. On the other hand, "the rule is that the taking of a promissory note for an antecedent liability does not constitute a payment of the debt, in the absence of an agreement to that effect, or evidence that such was the intention of the parties." Exchange National Bank v. Hunt, supra.

The taking of a demand note is not such an extension of time as would release the guarantor in this case, for a demand note is instantly due, and can be sued on at the moment when delivered. Johnson v. Learie, 100 Vt. 308 (137 Atl. 205); Mercantile Trust Co. v. Donk, (Mo.), 178 S. W. 113; Bottineau County Bank v. Stafford, 49 N. D. 942 (194 N. W. 393). The evidence in this case fails to show that there was any contract that the obligation was extended for any length of time. See Bunn v. Commercial Bank, 98 Ga. 647 (26 S. E. 63); Conn v. Simpson Grocery Co., 21 Ga. App. 284 (94 S. E. 260). In fact there was no evidence of an extension of time by the creditor after the death of the guarantor. The taking of the demand note and the crediting of the amount thereof and the giving of a check by the debtor did not amount to a novation and extinguishment of the original obligation, so as to discharge the guarantor. We do not think the principal was discharged on the original notes, for it was expressly recited in the demand note that the original notes were held by the creditor as collateral. The indebtedness on the original notes is

not discharged, although a demand note for the same indebtedness was taken, which demand note evidenced the obligation or indebtedness represented by the collateral notes representing the original indebtedness. State Bank of Isanti *v.* Mutual Telephone Co., 123 Minn. 314 (143 N. W. 912, Ann. Cas. 1915A 1082) ; Dies *v.* Wilson County Bank, supra. In the case sub judice there has been no extension of time or change in the terms of the agreement between the maker and the holder, whereby the risk of the guarantor has been increased or the liability of the guarantor enlarged. There has been no discharge of the original indebtedness on account of payment; on the contrary, when the notes fell due the maker delivered to the holder a new note in the form known as collateral notes, stipulating that the old notes (describing them) were collateral security for the same indebtedness represented by the new demand note, and the old notes were retained by the holder. *Kalmon* v. *Scarboro,* and *Scarboro* v. *Kalmon,* supra; Federal Trust Co. *v.* Central Trust Co. 244 Mass. 204 (138 N. E. 562) ; Merchants Banking Co. *v.* Jones, supra. It seems to us that this was in effect an express agreement that the original notes were not discharged by the new demand note. The creditor had the right to bring his action against the maker on the original indebtedness. There was no increase of the obligation of the guarantor; she was bound only to pay the indebtedness incurred by Martin Schroder & Co., before her death. The debt existing at the time of the death of Mrs. Bertha Schroder, the guarantor, had not been paid in full although notes had been given therefor. The renewal demand note of August 23, 1933, together with the check given and the entries on the books of the bank, did not extinguish the obligation. The contract of guaranty alone is being sued on in this case. The creditor is not attempting to enforce the notes, or to enlarge the liability of the guarantor, or to increase her risk. We think that the guarantor was not discharged, and that the judge did not err in directing a verdict in favor of the plaintiff.

*Judgment affirmed. Broyles, C. J. and Guerry, J., concur.*