[Civ. No. 3832.  First Appellate District, Division Two.—July 27,
1921.]

## ELMER RODABAUGH, Executor, etc., Respondent, v. MILTON KAUFFMAN et al., Appellants.

[1] PROMISSORY NOTE — CONSIDERATION — PRESUMPTION—FINDING.—A
promissory note carries the presumption of consideration, which
is evidence to be weighed against the testimony of the maker that
he did not receive any consideration, and with this conflict, the
finding of the trial court that a consideration passed should not
be disturbed.

[2] ID.—LIABILITY OF MAKER—DISPOSITION OF CONSIDERATION IMMATE-
RIAL.—A maker of a promissory note purporting to bind him alone
is bound thereby, although he has no personal interest in the
consideration and intends to use the same for a corporation.

[3] PARTNERSHIP—GUARANTY—AUTHORITY OF PARTNER.—One partner
has no authority to guarantee negotiable paper in the firm name,
or to make contracts of guaranty or suretyship, without authority
specially given him for the purpose, or implied from the common
course of the business of the firm, or from the previous course of

dealing between the parties, unless the act of such partner is afterward ratified by his copartners.

[4] ID. — SIGNING OF GUARANTY—FINDING—IMPLIED AUTHORITY OF PARTNER.—The effect of a finding that a partner had general authority to sign the partnership name to a guaranty, although he was not expressly authorized by his partner to do so, is that the authority to make the guaranty was implied from the common course of the business of the firm.

[5] ID.—EXECUTION OF GUARANTY—PARTNERSHIP AFFAIR—SUFFICIENCY OF EVIDENCE.—In this action upon a promissory note and guaranty, the evidence supports the finding that the partner was authorized to sign the guaranty and that the entire transaction was a partnership affair.

[6] GUARANTY — PROMISSORY NOTE — SEPARATE INSTRUMENTS — PLEADING—JOINDER OF PARTIES.—The guarantor of a promissory note may be joined as a party defendant with the maker, although the guaranty was executed upon a separate paper, it being a part of the same transaction.

[7] ID.—DEFAULT OF MAKER—IMMEDIATE LIABILITY OF GUARANTOR.— The guarantor of the payment of a promissory note becomes liable on default of the maker without demand or notice.

[8] ID.—EXTENSION OF TIME OF PAYMENT—GUARANTOR NOT EXONERATED. A guarantor under a guaranty to remain in force during all the renewals of the indebtedness is not discharged by an agreement extending the time of payment, there being no essential difference, so far as his rights are concerned, between such extension and a renewal.

APPEALS from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Woodruff & Shoemaker for Appellant Kauffman.

Ernest C. Griffith, Loewenthal, Loeb & Walker and Loewenthal, Collins & Loewenthal for Appellants' Goldschmidt et al.

Harry W. Hanson for Appellant American Steel Pipe & Tank Co.

A. P. Michael Narlian, Dan W. Simms, E. E. Hendee and Myron W. Silverton for Respondent.

NOURSE, J.—Plaintiff recovered judgment against defendants Kauffman, Goldschmidt Bros., a copartnership, and Max and Herman H. Goldschmidt, individually, upon a promissory note for $5,000 executed by defendant Kauffman and upon the written guaranty of Goldschmidt Bros., a copartnership, and Max Goldschmidt, executed by Max Goldschmidt as one of the partners and individually. Plaintiff also recovered judgment against defendant American Steel Pipe & Tank Company for $1,550, the balance found due on its written guaranty of payment to the extent of $2,500, which guaranty was executed on the same day but immediately following the execution of the note and as a part of the same transaction. Max Goldschmidt defaulted, and the defendant Kauffman, the defendants Goldschmidt Bros., and Herman H. Goldschmidt and the defendant American Steel Pipe & Tank Company separately appeal from the judgment against them.

The facts are that on September 15, 1916, the defendant Kauffman executed his promissory note in favor of E. Milton Greene, of whose estate plaintiff is the executor; that at the same time Max Goldschmidt made an unconditional guaranty of payment, by indorsement on the back thereof, on behalf of the partnership and himself individually, signing the indorsement: "Goldschmidt Bros. by Max Goldschmidt. Max Goldschmidt"; that $2,500 was then due the American Steel Pipe & Tank Company from the Valencia Groves Company, a corporation which some of the defendants were promoting, and in consideration of the payment of said sum to it the American Steel Pipe & Tank Company guaranteed payment of the note to the extent of $2,500. This written guaranty read in part as follows: "Provided the security is not changed without notice to undersigned, we, the undersigned, guarantee payment of $2500.00 of the $5000.00 note and the debt secured thereby. . . . When $2500.00 of said note is paid this guarantee is null and void; but it remains in force during all renewals of said indebtedness and until at least $2500.00 of said debt is paid."

The trial court found that the note was duly executed by Kauffman for a valuable consideration; that, as a part of the same transaction, Max Goldschmidt executed the written guaranty on behalf of himself and the partnership; that

Herman H. Goldschmidt had no knowledge of the making of the guaranty at the time; that Max Goldschmidt had authority to sign the guaranty but was not expressly authorized to do so by Herman; that at the same time the American Steel Pipe & Tank Company, for a valuable consideration, executed and delivered its guaranty in the sum of $2,500; that but $950 had been paid on said note; that Herman and Max Goldschmidt were both individually interested in the Valencia Groves Company, a corporation, and part owners thereof, and "that the financing of said Valencia Groves Company, a corporation, was a part of the said copartnership business, and that the note sued upon herein, and the guaranteeing of the payment thereof by said copartnership, was a part of the business of said copartnership."

[1] The appeal of Kauffman rests entirely upon the claim that he did not receive any consideration for the note. The argument is that the money was borrowed to pay obligations of the Valencia Groves Company, a corporation, of which he was president, director, and manager, and that none of the money received by him from the payee of the note was retained by him for his own use. The money was actually paid to him and the consideration then passed. The payee was not concerned with what use Kauffman made of the money after he received it. Then, too, the writing itself carries the presumption of consideration which is evidence to be weighed against this defendant's testimony. With this conflict, the finding of the trial court that a consideration passed should not be disturbed. (*Moore* v. *Gould,* 151 Cal. 723, 726, [91 Pac. 616].) [2] But Kauffman is not relieved from liability because he intended to use the money for the corporation. He did not purport to act for the corporation or to bind it upon the note. It was his individual act purporting to bind him alone, and even if he had proved a lack of personal interest in the loan he was nevertheless personally bound by the writing. (*Hall* v. *Jameson,* 151 Cal. 606, 611, [121 Am. St. Rep. 137, 12 L. R. A. (N. S.) 1190, 91 Pac. 518]; *Knoch* v. *Haizlip,* 163 Cal. 146, 151, [124 Pac. 998]; *Hobson* v. *Hassett,* 76 Cal. 203, 205, [9 Am. St. Rep. 193, 18 Pac. 320].)

[3] The appeal of the partnership and Herman Goldschmidt really presents but two questions: (1) The suffi-

ciency of finding No. 15 to support the judgment against them; and (2) the sufficiency of the evidence to support that finding.

(1) The material portions of this finding are quoted above. It is to the effect that the two Goldschmidt brothers, who alone constituted the partnership, were individually interested in the Valencia Groves Company and that the financing of said corporation, including the execution of the guaranty in suit, was a part of the business of said partnership. Now, it may be stated as a general rule that one partner "has no authority to guarantee negotiable paper in the firm name, or to make contracts of guaranty or suretyship, without authority specially given him for the purpose, or implied from the common course of the business of the firm, or from the previous course of dealing between the parties, unless the act of such partner is afterward ratified by his copartners." (20 Ruling Case Law, p. 899.) [4] The trial court found that, though Max had general authority to sign the partnership name on the back of the note, he was not expressly authorized by Herman to do so. The effect of this finding is that the authority to make the guaranty was implied "from the common course of the business of the firm." These findings, taken together, are sufficient to support the judgment.

(2) There was evidence that for many years prior to this transaction the partners had both used the credit of the firm in real estate transactions in which one or both were interested. There was also evidence that this particular transaction had its origin in the profits of the sale of real property known as the Baldwin Park which Max purchased with funds of the firm on the advice of Herman that "it looked A–No. 1 as an investment for the firm." Then it appears that the Valencia Groves transaction was entered into for the benefit of the firm as an investment of its funds, and was so carried on the books of the firm until May, 1917, a few weeks before the financial difficulties arose and the partnership was dissolved. At that time the account was transferred on the books to Max Goldschmidt. It does not appear that either of the partners were stockholders in the Valencia Groves Company. Apparently the agreement was that the money would be advanced to Kauffman for the benefit of the corporation which he controlled upon the

understanding that the profits would be equally divided.    It
was not necessary to show a partnership relation between
Kauffman and the Goldschmidts in this particular transaction. The evidence discloses a joint adventure between
Kauffman and the partnership of Goldschmidt Bros.    If the
transaction had been a financial success, fifty per cent of the
profits would have gone into the treasury of Goldschmidt
Bros. to offset the account carried on the books as a partnership investment.    What adjustments of these accounts
would thereafter be made could not alter the fact that the
transaction was from its inception financed by partnership
funds and on partnership credit.    For a year or more this
course of dealing was maintained—the partnership advancing its funds to both Kauffman and the corporation for
the purpose of the development of the corporation property.
The evidence that the partnership engaged in the business
of financing the land company as an investment enterprise
supports the finding that it was partnership business.

There was also evidence that in this particular transaction
Max was the ostensible agent of the partnership and of
Herman individually; that Max had been authorized to act
for Herman in the entire transaction and that, as the partnership agreed to advance all funds necessary for the development of the property, the guaranty of this note to
raise funds for development purposes was within the authority so conferred.    [5]  This evidence supports the finding that Max was authorized to sign the paper and that
the entire transaction was a partnership affair.

Stress is placed on the testimony that before Herman
indorsed the notes for interest on a bank loan to the
Valencia Groves Company he demanded that Max and Kauffman agree to give him one-third of the profits of the land
transaction.    From this it is argued that he had theretofore
no thought of participating in the profits and that, as his
demand was refused, he was not at any time interested.
But as the agreement in evidence was that Kauffman and
the Goldschmidts were to divide the profits fifty-fifty, Herman's share would have been one-quarter; so no significance
can be attached to his demand for one-third or in Kauffman's refusal to grant his request.

Appellant American Steel Pipe & Tank Company urges
three grounds for reversal of the judgment against it: (1)

That it cannot be sued on its guaranty in the same action as that against the maker of the note; (2) that it is relieved from liability by a modification of the original undertaking; (3) that, if Goldschmidt Bros. are not bound as a partnership, this appellant is not bound because its guaranty was conditioned on the guaranty of the partnership. None of the propositions has any substantial merit.

[6]     (1) If the guaranty is on the same instrument, the guarantor is properly joined as a party with the maker of the note. (Sec. 383, Code Civ. Proc.; *Melander* v. *Western Nat. Bank,* 21 Cal. App. 462, 471, [132 Pac. 265] ; *Titus* v. *Woods,* 45 Cal. App. 541, 188 Pac. 68.) Here, though the guaranty was executed upon a separate paper, it was a part of the same transaction, demanded by the payee and agreed to by the guarantor before the note was executed. [7]     The appellant was a guarantor of payment and as such became liable on default of the principal without demand or notice. (Sec. 2807, Civ. Code.) It could have been sued separately or joined with the maker of the note at the option of respondent.

[8] .   (2) The appellant guaranteed payment to the extent of $2,500, the guaranty to remain in force "during all renewals of said indebtedness and until at least $2,500 of said debt is paid." The provisional agreement to extend time of payment if $2,000 was paid within twenty days, an agree-. ment which was never carried out, did not modify the original undertaking or in any way impair or suspend the rights of the creditor. So far as the rights of a guarantor are concerned there is no essential difference between an extension of the time of payment of the old note and a renewal. (*First Nat. Bank* v. *Spalding,* 177 Cal. 217, 222, [170 Pac. 407].)

(3) Without holding that this appellant's guaranty was conditioned upon the proviso that the partnership had made a valid and enforceable guaranty of the original obligation, it is sufficient to say that, it having been held in this case that the partnership is bound, this point is not available to this appellant. Other points suggested by counsel do not require consideration.

The judgment on each appeal is affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 26, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1921.

All the Justices concurred, except Shaw, J., who was absent.