CORN EXCHANGE BANK TRUST COMPANY, Appellant, *v.* ALBERT L. GIFFORD, Respondent.

(Argued June 3, 1935; decided July 11, 1935.)

*Frank C. Laughlin, Spotswood D. Bowers* and *Stewart W. Bowers* for appellant. The contract of guaranty should be given a reasonable interpretation and all the provisions thereof should be given full effect and this can be done only by construing the power to revoke as terminating the continuing nature of the guaranty and preventing the guaranty applying to any new indebtedness, but not to the indebtedness already incurred, including " renewals " or " extensions of time of payment " of the then existing indebtedness. (*Powers* v. *Clarke,* 127 N. Y. 417; *Schmitz* v. *Langhaar,* 88 N. Y. 503; *Smith* v. *Molleson,* 148 N. Y. 241; *Shultz* v. *Crane,* 6 Hun, 236; 64 N. Y. 659; *Gurley* v. *Frieder,* 28 App. Div. 501; *Krakauer* v. *Chapman,* 16 App. Div. 115; *Fleischman* v. *Fergueson,* 223 N. Y. 235; *Browne* v. *Paterson,* 165 N. Y. 460.) When an absolute guaranty of payment extends by its terms to renewals or extensions the renewal or extension of a note guaranteed, even after notice of cancellation of the guaranty, does not discharge the guarantor. (*Brown* v. *Curtiss,* 2 N. Y. 225; *Bank of United States* v. *Chemical Bank & Trust Co.,* 140 Misc. Rep.

394; *Merchants' Nat. Bank* v. *Hall,* 83 N. Y. 338; *Gelpcke* v. *Quentell,* 74 N. Y. 599; *Bonart* v. *Rabito,* 141 La. 970; *Neblett* v. *Cooper Grocery Co.,* 180 S. W. Rep. 1162; *Rodabaugh* v. *Kauffman,* 200 Pac. Rep. 747; *Woelfel* v. *Rtan Grocery Co.,* 184 S. W. Rep. 803; *Valley Nat. Bank* v. *Cownie,* 145 N. W. Rep. 904; *Goff* v. *Janeway & Carpender,* 99 S. W. Rep. 602.)

*Robert B. Watts* and *Charles Foster Brown* for respondent. The guaranty having been drafted by plaintiff and presented to defendant for his signature, all doubts and ambiguities therein should be resolved in defendant's favor. (*Gillet* v. *Bank of America,* 160 N. Y. 549; *United Water Works Co.* v. *Omaha Water Co.,* 164 N. Y. 41; *Marshall* v. *Commercial Trav. Mut. Acc. Assn.,* 170 N. Y. 434; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215; *Sanford* v. *Brown Bros. Co.,* 208 N. Y. 90; *Elwood* v. *Goldman,* 217 N. Y. 585; *Dery* v. *Blate,* 239 N. Y. 203; *Evelyn Building Corp.* v. *City of New York,* 257 N. Y. 501; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187.) Neither the surrounding circumstances nor any rule of construction can justify the interpretation of the guaranty as an agreement by defendant to continue liable, after revocation, as guarantor of subsequent renewals of the note outstanding at the time of revocation. (*Young* v. *Leary,* 135 N. Y. 569; *Ames* v. *Belden,* 17 Barb. 513.) If defendant did not agree for a consideration to continue liable, after revocation of the guaranty, as guarantor of renewals thereafter accepted by plaintiff, he was completely absolved from liability when plaintiff accepted a renewal of the only note outstanding at the time of revocation. (*National Eagle Bank* v. *Hunt,* 16 R. I. 148; *Hard* v. *Mingle,* 206 N. Y. 179; *Merchants Nat. Bank* v. *Hall,* 83 N. Y. 338; *City Nat. Bank* v. *Phelps,* 86 N. Y. 484; *Gay* v. *Ward,* 67 Conn. 147; *Bank of United States* v. *Andron,* 277 N. Y. Supp. 594; *Smith* v. *Molleson,* 148 N. Y. 241.)

CRANE, Ch. J.   On April 11, 1930, Tompkins & Bevers, Inc., borrowed $100,000 from the Eighty-sixth Street Branch of the Corn Exchange Bank Trust Company for the purpose of buying 3,337 shares of Hudson River Yards.   On that date the corporation gave the bank its promissory note for that amount with interest payable on October 14, 1930.   As collateral security for the payment of the note, the corporation deposited and pledged with the bank the stock and also gave the personal guaranty of the president and treasurer of the company. The note was dated April 11, 1930, and was payable the 14th day of October of the same year.

Shortly before the due date, Mr. Kittredge, the treasurer, told the officers of the bank that the corporation could only pay $15,000 and asked for an extension of the balance.   He was informed that the renewal would be granted only if an additional guarantor satisfactory to the bank were secured.   Thereupon Mr. Kittredge obtained the guaranty of his father-in-law, the defendant, Albert L. Gifford, telling him about the facts of the transaction in the following words:

" A.   I told him that we had borrowed $100,000 from the bank, that we were only able to pay $15,000 at that time, that the Corn Exchange Bank had asked Mr. Sherer to notify me that they could not go ahead and get a new line of $85,000 unless I had a satisfactory guarantor.   I had two men in mind that I might get.   I went to Mr. Gifford and asked him if he would sign as guarantor and I told him at that time that the note would be $85,000.

" Q.   And he said he would sign it?   And he did sign it?   A.   Yes, sir."

As we read the guaranty which Mr. Gifford signed, we must remember that it was given to procure a renewal of this $100,000 note which was coming due.   The guaranty was in the following words:

" For the sum of One Dollar in hand to me paid, by the Corn Exchange Bank Trust Co. of the City of New York,

receipt whereof is hereby acknowledged; I do hereby guarantee to said Company *to the extent of $100,000 the prompt payment, when due, of each and every claim and demand* of the said Corn Exchange Bank Trust Co. against Tompkins & Bevers, Inc. *now existing or which may hereafter arise;* my liability hereunder shall not extend beyond the said sum $100,000. at any one time, *but this guaranty is a continuing guaranty for the said sum and shall remain in force until duly revoked by me by notice in writing* to the said company and *shall extend to and cover all renewals of any claims or demands guaranteed under this instrument or the extensions of time of payment thereof*, and *shall not be affected by any surrender or release by said Company of any other security held by it for any claims or demands hereby guaranteed.*

" Witness my hand at New York, N. Y. this fourteenth day of October, 1930.

" A. L. GIFFORD.

" In presence of:

" ROBERT GALBRAITH."

Upon receiving this guaranty the note was extended for one month for $85,000, and thereafter from time to time the indebtedness of Tompkins & Bevers, Inc., was extended or renewed by taking new notes and canceling the old notes, and from time to time payments were made on account, the indebtedness being reduced so that on June 8, 1931, the note, as renewed and extended, had been reduced to $70,000, at which time the defendant revoked his guaranty in the following words:

" With reference to the guarantee which I executed and filed with you October 14th, 1930, guaranteeing note of Tompkins & Bevers, Inc., in the amount of One hundred thousand dollars ($100,000), I hereby, *under the terms of such guarantee, revoke* same.

" I take this step reluctantly as I should regret exceedingly to embarass the officers of Tompkins & Bevers, Inc., but my present nervous condition is such that my physi-

cian insists on my cancelling all commitments of whatever nature, and that I take a prolonged rest.

" I have no lack of confidence in the credit of Tompkins & Bevers, Inc.; I am aware that they have steadily reduced their loan and I am confident they will continue to do so."

Thereafter the then indebtedness of Tompkins & Bevers, Inc., to the plaintiff was never increased, but the note was extended from time to time in the same way as previously until June 16, 1933, when it had been reduced to $40,500. The renewals were always conducted in the same way as before revocation.

The sole question presented on this appeal is the construction of the guaranty and whether under its terms the plaintiff could after notice of revocation extend the time of payment without thereby discharging the defendant from all liability.

We take the guaranty as we find it as the surest way of determining the rights of these parties. We think it unambiguous. Mr. Gifford, the defendant, knew that the corporation of which his son-in-law was the treasurer, had borrowed $100,000 from the bank on a note which was coming due. The corporation could pay $15,000 and no more. The note would not be renewed without a guaranty, and he furnished it. As above quoted, he guaranteed the company to the extent of $100,000 the prompt payment of each and every claim and demand when due, which the trust company had against Tompkins & Bevers, Inc. This applied not only to claims then existing but to those which might arise thereafter. The guaranty is to be a continuing guaranty and to cover claims to the extent of $100,000 that might arise thereafter. This looked into the future and anticipated new or additional transactions. Renewals of the present existing indebtedness thereafter would be included in these words. To the extent of $100,000, says Mr. Gifford, I guarantee the payment of every claim " now existing or which may

hereafter arise." If the note guaranteed became due and was renewed, it would be a claim either existing or arising after the guaranty. The agreement then goes on to state that the guaranty "shall remain in force until duly revoked by me by notice in writing to the said company and shall extend to and cover all renewals of any claims or demands guaranteed under this instrument." These words are broad enough to cover the renewals of an indebtedness existing at the time of revocation. The words used are " all renewals." The parties could easily have said " or the extension of time of payment thereof prior to revocation " if such a meaning were intended. The words " prior to revocation " are not used. The judge at Special Term in his opinion found it very easy to express such an intention for he said the only fair construction that can be placed upon the instrument of guaranty is that the defendant intended thereby to be responsible for the original debt and any extension granted prior to its revocation. The difficulty with this construction is that it is contrary to what the parties did say. The words " prior to its revocation " are not found in the instrument and I know of no authority by which the courts can add them.

It was not necessary to use the phrase " shall extend to and cover all renewals of any claims " unless it had reference to renewals after revocation, and the use of the words " all renewals " indicates in the absence of any limitation or restriction that they were intended to apply to the renewals or extension of the indebtedness existing at the time of revocation.

With these expressions of our views, the judgment of the Appellate Division and that of Trial Term should be reversed and judgment directed for the plaintiff for the amount due, with interest, and costs in all courts.

LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur; HUBBS, J., not sitting.

Judgment accordingly.