JAMES TALCOTT, INC., Appellant, *v.* LEONARD BLOOM et al., Respondents.

First Department, March 21, 1968.

*Lawrence G. Novick* of counsel (*Herbert L. Ash* with him on the brief; *Hahn, Hessen, Margolis & Ryan,* attorneys), for appellant.

*David J. Mandel* of counsel (*Jezer, Slade & Weiss,* attorneys), for respondents.

CAPOZZOLI, J. This is an action by plaintiff factor to recover under a written guaranty executed by the defendants. Defendant Leonard Bloom is the president of Milard Clothes, Inc. (hereinafter referred to as " Milard "), a men's clothing manufacturer to which several of plaintiff's clients sold merchandise. Said defendant and his wife executed the subject guaranty " to induce you [plaintiff] to extend or to permit any concern for which you may now or in the future act as factor to extend credit [and other consideration and financial accommodation] to Milard Clothes, Inc.".

The course of dealing between plaintiff, its clients and Milard followed a standard pattern. Milard would order goods from Talcott's clients. The goods were of a special variety requiring manufacture in Japan or Italy. Its clients would advise plaintiff of the orders and would request plaintiff to approve a line of credit for Milard on such orders. Plaintiff would then approve credit, and the manufacture of the goods would proceed.

The guaranty is clear and unambiguous in its language and precisely defines the obligations of each of the parties to the other. It specifically sets forth, amongst other things, that the defendants are liable for the payment to plaintiff of any and all debts of Milard Clothes, Inc., " of whatever nature, whether matured or unmatured, whether absolute or contingent and whether now or hereafter existing or arising or contracted or incurred or owing to or acquired by you [plaintiff] by assignment, transfer or otherwise, including without limitation, unpaid merchandise bills, notes or drafts (all of which contracts, agreements and debts are hereinafter referred to as ' Customer Obligations ')." Accordingly, it was error for the court below to refer to the factoring contracts between plaintiff and its clients, or to any other writing, in construing the meaning of the language of this guaranty agreement. (*Standard Factors Corp.* v. *Kreisler,* 53 N. Y. S. 2d 871, affd. 269 App. Div. 830, mot. for lv. to app. den. 294 N. Y. 646.)

It is true that, under the terms of the continuing guaranty, it could be terminated by actual receipt by plaintiff from the defendants, by registered mail, of a written notice of termination. However, by the very terms of the guaranty agreement such termination was applicable " only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected."

Between July 29, 1964 and November 4, 1964, various clients of the plaintiff received orders for merchandise from Milard which totalled $15,205.52. This merchandise was to be specifi-

cally manufactured in foreign countries for delivery to Milard in late 1964 or early 1965. The plaintiff issued credit approvals for these orders. The merchandise was manufactured, delivered to and accepted by Milard. However, none of the moneys due therefor were paid.

Between October 7, 1964 and November 5, 1964, one of plaintiff's clients, Export-Import Woolens Co., received orders from Milard totalling $22,772.53. The plaintiff issued credit approval for these orders and work was begun thereon. Delivery of said merchandise was scheduled for late February, April and May of 1965. Plaintiff, in its affidavits submitted at Special Term, stated that such goods arrived in the United States " at a time when Milard was no longer operating ". Although defendants submitted a " rebuttal affirmation " they nowhere denied this statement. It should also be noted that on April 9, 1965 Milard made a general assignment for the benefit of creditors. This, of course, took place after the plaintiff had already approved the credit on the last-mentioned orders and the goods were already being manufactured, if not completed. Since Milard's business activities had ceased, and in order to minimize the loss resulting from its inability to fulfill its obligations, plaintiff's clients sent the goods directly to plaintiff and billed it for them. Such goods were subsequently disposed of by plaintiff at a loss of $5,455.59.

On December 2, 1964, after all of the goods hereinabove listed, including those ultimately delivered directly to plaintiff, had been ordered, credit approved and work thereon begun, the defendants advised Talcott, in writing, that their continuing guaranty was terminated.

The question which arises and which is the basis of this lawsuit is whether defendants are responsible for the nonpayment of the price of all of the goods above listed despite the fact that they cancelled their guaranty prior to receipt of such goods by Milard and/or plaintiff.

It is clear that all of these goods were ordered and were already in the process of being manufactured in Italy and Japan when defendants terminated the guaranty. Therefore they came within the language of the guaranty which provides that " transactions having their inception prior to such termination shall not be affected ".

The dissent's reliance upon the case of *Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.* (122 N. Y. 247) is misplaced. We are not here dealing with construction of written instruments which employ " language  *  *  *  not free from ambiguity " or language which is " equivocal " in nature. The

guaranty before this court is an unambiguous, complete instrument. Therefore, we must " take the guarantee as we find it as the surest way of determining the rights of these parties ". (*Corn Exch. Bank Trust Co.* v. *Gifford,* 268 N. Y. 153, 158.) As has been stated by this court in *Janos* v. *Peck* (21 A D 2d 529, 532–533, affd. 15 N Y 2d 509) : " The wording is plain and unambiguous and therefore a reference to extraneous facts is unnecessary to a determination as to the construction and effect thereof. ' It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered (*General Phoenix Corp.* v. *Cabot,* 300 N. Y. 87) and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract (*Brainard* v. *New York Central R.R. Co.,* 242 N. Y. 125; *Matter of Western Union Tel. Co., [American Communications Assn.*], 299 N. Y. 177).' (*Bethlehem Steel Co.* v. *Turner Constr. Co.,* 2 N Y 2d 456, 460.) "

A consideration of the facts in this case, in the light of the language of the guaranty agreement between the parties hereto, leads to the conclusion that the defendants are clearly liable to the plaintiff for the loss which it sustained by reason of the failure of the defendants to comply with their guaranty.

Accordingly, the order and judgment appealed from should be reversed on the law and summary judgment awarded to plaintiff, as requested in its notice of motion, with costs and disbursements.

EAGER, J. P. (dissenting). I would reverse and vacate the judgment for defendants but would modify the order, entered September 20, 1967, to delete the direction that defendants have summary judgment and otherwise affirm. Special Term properly denied plaintiff's motion for summary judgment.

The close questions of construction involved here should not be determined without affording the parties an opportunity of a plenary trial. " It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact." (*Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.,* 122 N. Y. 247, 254; *Lachs* v.

*Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357, 364.) Thus, ambiguity in a contract generally gives rise to issues of fact precluding summary judgment. (See *Rochester Capital Leasing* v. *Barber,* 19 A D 2d 114; *Janos* v. *Peck,* 21 A D 2d 529, 536, affd. 15 N Y 2d 509.)

The written " Customer Guaranty " agreement by its intendment and terms was a continuing guaranty to cover plaintiff as a factor or otherwise in extending credit to Milard Clothes, Inc. (the customer). The parties expressly agreed that the continuing guaranty was to remain in full force and effect until terminated by written notice and that " such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected." The parties are in dispute as to the meaning and effect of these provisions in their application to merchandise ordered by Milard from plaintiff's factoring clients but not delivered as of the time of defendants' termination of the agreement. The question arises as to whether these orders should be considered as " transactions having their inception " prior to the termination. Further, there exist issues of fact as to the " rights and obligations " of the plaintiff " arising out of " such orders.

Concededly, the agreement should be given the effect intended by the parties but the record discloses substantial doubt as to such intent, thereby raising triable issues. To ascertain the parties' intent, the agreement should be construed in light of all relevant surrounding circumstances. In this connection, reference may be had to the terms and conditions of the factoring contracts between the plaintiff and its clients. (The plaintiff makes such contracts a part of its motion papers.) Under the terms of such contracts, the plaintiff was not obligated to and did not extend credit to clients until the taking of an assignment of the particular accounts and the making of advances thereon. As pointed out by Special Term, it appears that the plaintiff retained and had the power and authority upon a tendered assignment of a particular account to reject it at any time before delivery of the merchandise. Here, it appears that the plaintiff did not make any advances or take any assignments on the basis of the particular merchandise orders until after it had received the notice terminating the defendants' guaranty. In light of these circumstances, there are issues of fact as to the " rights and obligations " of the plaintiff under the guaranty agreement with reference to the alleged credit approvals issued by plaintiff with respect to the particular orders.

Particularly, the record does not support a matter of law determination that the plaintiff should have a judgment for the alleged loss of merchandise ordered from Export-Import Woolens Corp. by Milard but not shipped to Milard. Although the burden of proof is upon the plaintiff, the record contains very little by way of evidentiary showing in support of plaintiff's claim to recover its alleged loss from the defendant guarantors, and, in fact, the details of such loss are not shown. It appears that the goods were shipped to and received by plaintiff (not Milard) some two or three months after the termination of the guaranty. Under these circumstances, it would appear that plaintiff did not and could not acquire by assignment any account payable by Milard nor make any advance on the basis thereof. Furthermore, a question arises as to whether there was in fact ever a '' debt '' owing by Milard and, thus, the terms of the guaranty agreement, referred to in the opinion of the majority, would not establish a matter of law liability on the part of the defendants to pay plaintiff for its alleged loss in taking and reselling this merchandise.

TILZER and RABIN, JJ., concur with CAPOZZOLI, J.; EAGER, J. P., dissents in opinion in which BASTOW, J., concurs.

Order and judgment reversed, on the law, with $50 costs and disbursements to appellant, and plaintiff's motion for summary judgment granted, with $10 costs.