[Civ. No. 53055. Second Dist., Div. Three. Nov. 21, 1978.]

AMERICAN CITY BANK, Plaintiff and Respondent, v.
MARY H. TOURTELOT, as Executrix, etc., Defendant and Appellant.

## COUNSEL

Magaram, Riskin, Wayne & Minikes and Robert H. Tourtelot for Defendant and Appellant.

Danning, Gill, Michaelson & Gould, David Gould and Richard K. Diamond for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant, Mary H. Tourtelot, as the executrix of the estate of Fred I. Tourtelot, deceased, appeals from a summary judgment entered in favor of plaintiff, American City Bank, in an action to enforce a continuing guaranty of indebtedness executed by the decedent.

Plaintiff's complaint, filed on October 27, 1976, alleged: that on December 9, 1974, decedent had executed a continuing guaranty in the principal amount of $15,000 to be applied to any indebtedness owed by California Bankers Trust Company (hereinafter CBTC) to plaintiff; that CBTC had executed in favor of plaintiff two promissory notes, whose total sum was $150,000, of which only $20,041.37 of the principal has been paid; that although the remaining balance is now due and owing, defendant, as decedent's representative, has rejected plaintiff's verified claim in the amount provided for in the guaranty.

Defendant, in her answer to the complaint, asserted as an affirmative defense that the indebtedness referred to in the complaint had been renewed and extended subsequent to the time that decedent's death (and plaintiff's knowledge thereof) had effectively revoked the decedent's guaranty, and that his estate was therefore not liable on the instrument.

On September 2, 1977, the court rendered a summary judgment in plaintiff's favor in the amount of $17,303.32, representing $15,000 in principal, $1,420.70 interest, and $882.62 reasonable attorneys' fees, all as provided for by the terms of the guaranty.

The principal question presented on this appeal is whether the court erred in rejecting defendant's affirmative defense of revocation. We conclude that it did not and, therefore, affirm the judgment.

FACTS

As a partial consolidation and renewal of a series of previous loans dating back to September 1974, plaintiff lent to CBTC, on January 15, 1975, and February 28, 1975, $100,000 and $50,000, respectively. The loans were evidenced by two promissory notes, both of which were made due and payable on April 15, 1975.

Prior to the execution of the promissory notes, plaintiff had obtained continuing guaranties (see Civ. Code, § 2814) in the amount of $15,000 from 10 of the directors of CBTC, including the decedent, whose guaranty was dated December 9, 1974. Under the terms of the guaranty executed by him, decedent promised to pay to plaintiff up to $15,000 of "any and all indebtedness" owed by CBTC to plaintiff, plus interest thereon.

Pertinent here are the following three paragraphs from the guaranty:

"4. Either before or after revocation hereof and in such manner, upon such terms and at such times as it deems best and with or without notice

to me, the bank may alter, compromise, accelerate, extend or change the time or manner for the payment of any indebtedness hereby guaranteed, increase or reduce the rate of interest thereon, release or add any one or more guarantors or endorsers, accept additional or substituted security therefor, or release or subordinate any security therefor. No exercise or non-exercise by the bank of any right hereby given it, no dealing by the bank with debtor or any other person, and no change, impairment or suspension of any right or remedy of the bank shall in any way affect any of my obligations hereunder or any security furnished by me or give me any recourse against the bank.

"14. This is a continuing guarantee and notice of its acceptance is waived. It shall remain in full force until and unless I deliver to the bank written notice revoking it as to indebtedness incurred subsequent to such delivery but such revocation shall not affect any of my obligations or any rights of the bank hereunder with respect to indebtedness incurred prior thereto nor shall it affect any obligation of any other guarantor who signs this guarantee.

"17. This guarantee shall inure to the benefit of the bank, its successors and assigns, including the assignees of any indebtedness hereby guaranteed, and bind my heirs, executors, administrators, successors and assigns. . . ."

CBTC failed to make payment on the two promissory notes when they became due on April 15, 1975, and thereupon requested plaintiff to extend the terms of the notes. By letter dated April 28, 1975, plaintiff wrote to each of the 10 guarantors to inform them of its willingness to grant an extension of the time for payment with the express understanding "that any such extension would be made on the strength of the personal financial resources of the guarantors of the referenced indebtedness and not on the financial strength of . . . [CBTC], which is currently in a deteriorating condition, and with the understanding that, in the event of a default by . . . [CBTC], the undersigned will look directly and exclusively to the guarantors of said indebtedness, and not to . . . [CBTC], for the repayment of said indebtedness."

Plaintiff's letter of April 28 concluded by asking each guarantor to acknowledge in writing his continuing personal liability for the repayment of the notes notwithstanding an extension of the due dates thereof. All 10 guarantors, however, refused to execute such an acknowledgment,

causing plaintiff to decide not to "renew" the obligations, but rather to carry them "past due."[1]

On January 15, 1976, the manager of plaintiff's loan adjustment department, John Seymour, met with the president of CBTC, Francis M. Smith, to discuss the situation and to determine what plans CBTC had for repayment of the $150,000 it owed plaintiff. Seymour's notes of the meeting reflect that Smith had told him that "any principal reduction program would drain the company of its working capital and result in its demise." Smith further indicated, however, that a merger involving CBTC was being proposed and that if plaintiff was willing to wait until March 1, 1976, a repayment program could be established.

Seymour then offered two alternatives to Smith. The first provided that CBTC would pay $8,566.66 in accrued interest on or before January 30, 1976, and then monthly installment payments of $10,000 plus interest commencing on March 1, 1976. The source of the funds was to be either the company's cash inflow from the merger or funds supplied by the guarantors. The second alternative required that CBTC organize the guarantors into a repayment program whereby each would make contributions through liquidation of personal assets to a monthly repayment program similar to that set forth in the first alternative.

Smith, on behalf of CBTC, chose the first alternative. Plaintiff then had a confirmation letter prepared which was to be reviewed by plaintiff's counsel; upon approval of counsel, the confirmation was to be sent to the guarantors and to CBTC.

On January 22, 1976, plaintiff first learned of the death of the decedent, which had occurred on November 18, 1975. By letter dated January 23, 1976, plaintiff informed CBTC and the guarantors of the confirmation of the repayment program. A copy of the January 23 confirmation letter was mailed to decedent, despite the fact that plaintiff had by then been informed of his death.

On February 19, 1976, Seymour wrote to Smith to acknowledge plaintiff's receipt from CBTC of $8,566.66 in accrued interest. While it appears that one payment of $10,000 plus accrued interest was made by CBTC sometime in March or April of 1976 through the contribution of one of the guarantors, CBTC thereafter failed to make any payments

---

[1]Although the guarantors refused to execute the requested acknowledgment, none of them revoked his guaranty in writing as was required under paragraph 14 of the guaranty.

under the repayment program.[2] Plaintiff consequently made demand of defendant, as decedent's representative, of payment on decedent's guaranty; the present litigation followed from defendant's rejection of the demand.

## DISCUSSION

As in the proceedings below, defendant asserts that decedent's estate was released from liability on the guaranty when plaintiff "renewed" the promissory notes on January 23, 1976, after it had obtained knowledge on January 22, 1976, of decedent's death.

■ We note preliminarily in this regard that we cannot accept plaintiff's suggestion that paragraph 17 of the guaranty, which provides that the instrument shall be binding on the maker's "heirs, executors, administrators, successors and assigns," was intended to prevent notice of the maker's death from acting as a revocation of the guaranty. The established law of this state is that a creditor's knowledge of a guarantor's death will result in the revocation of a continuing guaranty with respect to future advances. (*Valentine* v. *Donohoe-Kelly Banking Co.* (1901) 133 Cal. 191, 195 [65 P. 381]; see generally, Annot. (1926) 42 A.L.R. 926.) Had the parties wished to change this rule, they could have done so by more explicit language. As drafted, the language referred to by plaintiff merely establishes that a guarantor's estate shall remain responsible after the guarantor's death for any liability incurred by him under the guaranty during his lifetime.

■ Thus, the only question remaining for determination is whether plaintiff's decision on January 23, 1976 to accept CBTC's repayment program resulted in the creation of a "subsequent" indebtedness for which decedent's estate is not responsible by virtue of his guaranty having been revoked the previous day. In arguing that the estate has, in this manner, been relieved of liability, defendant relies principally on *Southern Cal. First Nat. Bank* v. *Olsen* (1974) 41 Cal.App.3d 234 [116 Cal.Rptr. 4] (hereinafter cited as *Olsen*).

In *Olsen,* the defendants were induced (without knowledge of what they were signing) into executing a continuing guaranty which held them secondarily liable for up to $20,000 of the indebtedness of a corporation, the term "indebtedness" being defined in the guaranty as including " 'all

---

[2]It appears, however, that as of June 11, 1976, at least four of the guarantors have made partial payments of the sums owing under the guaranties.

renewals and extensions' " of the obligation. (*Olsen,* at p. 237.) The guaranty signed by the defendants in *Olsen* further provided as follows: " '. . . This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions . . . . [¶] Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon. . . .' " (*Olsen,* at p. 238.) After the defendants had submitted to the creditor their written revocation of the guaranty, the creditor renewed the underlying obligation several times, increasing the rate of interest in the process. When the final renewal note was not paid, the creditor sought to hold the defendants liable. (*Olsen,* at pp. 238-239.)

In holding that the defendants were not liable under the language of the guaranty they had signed, the court in *Olsen* first recognized that as a general rule a guarantor will not be exonerated by a change in the terms of the underlying indebtedness if the change is made with the guarantor's consent, which consent may be given in advance. (*Olsen,* at p. 240, citing *Bloom* v. *Bender* (1957) 48 Cal.2d 793, 801 [313 P.2d 568].) The court found this general rule to be inapplicable to the situation before it, however, since it determined that the renewal of the note at a new interest rate had created a " 'future transaction' " for which the defendants were not liable after they had given written notice of revocation. (*Olsen,* at p. 240.)

Contrary to defendant's assertions, *Olsen* is distinguishable from the case at bench. We note initially that defendant has demonstrated a misunderstanding of the applicable law in her assumption that the outcome of the present case depends upon whether plaintiff's decision to accept CBTC's repayment program constituted a renewal of the notes or merely an extension of the existing obligations. It is the law of this state that "[s]o far as the rights of a guarantor are concerned there is no essential difference between an extension of the time of payment of the old note and a renewal." (*Rodabaugh* v. *Kauffman* (1921) 53 Cal.App. 676, 682 [200 P. 747]; see 38 Am.Jur.2d, Guaranty, § 64, pp. 1065-1066.)

What is of importance here is to discover, from the language of the guaranty, what the parties mutually intended at the time of contracting. (*Olsen,* at p. 241.)

Here, the language of the guaranty is distinctly different from that employed in the *Olsen* case. Paragraph 4 of the instrument before us states: *"Either before or after revocation hereof* and in such manner, upon such terms and at such times as it deems best and with or without notice to me, the bank may alter, compromise, accelerate, extend or change the time or manner for the payment of any indebtedness hereby guaranteed, . . . No exercise or non-exercise by the bank of any right hereby given it . . : shall in any way affect any of my obligations hereunder or any security furnished by me or give me any recourse against the bank." (Italics added.) In light of the italicized portion of the quoted language, the parties must have intended by this paragraph that the guarantor's liability for sums advanced to his principal prior to revocation would not be affected by any extension of the obligation or other modification of the time or manner for payment of the obligation, whether that extension or modification occurred prior to or after revocation.[3] This interpretation of paragraph 4 is consistent with the language in paragraph 14 of the guaranty, which provides that revocation will not affect any of the guarantor's obligations or any of plaintiff's rights "with respect to indebtedness incurred prior thereto. . . ."

In view of the foregoing, the correctness of the trial court's judgment is manifest. There is no question but that all of the indebtedness incurred by CBTC for which plaintiff now seeks to hold decedent's estate liable was advanced to the corporation prior to the time that decedent's guaranty was revoked by notice of his death. As such, plaintiff's decision to extend or renew the obligations following that revocation did not, pursuant to the terms of the guaranty, create a "subsequent" indebtedness for which decedent's estate is not responsible.

Defendant asserts as an alternative ground for reversal that summary judgment was an improper remedy here since a triable issue of fact remains as to whether the notes were renewed or merely carried past due. As noted previously, however, whether the notes were renewed or carried past due is inconsequential to the question of the liability of decedent's estate under the guaranty. (*Rodabaugh* v. *Kauffman, supra,* 53 Cal.App. 676, 682.) Moreover, the parties are in essential agreement as to what occurred here factually, the only dispute being as to the legal effect of those occurrences. In fact, defendant did not even contend in her opposition to plaintiff's motion for summary judgment that factual issues

[3]This in fact is the rule followed in several states, even when the language pertaining to the effect of revocation is not as explicit as that present here. (See, e.g., *Corn Exchange Bank Trust Co.* v. *Gifford* (1935) 268 N.Y. 153 [197 N.E. 178, 100 A.L.R. 1233]; *Exchange Nat. Bank* v. *Hunt* (1913) 75 Wash. 513 [135 P. 224].)

remained to be resolved. The affidavits of the parties having revealed no factual issues remaining, but merely a question of law, the motion for summary judgment was properly granted. (*National Exhibition Co.* v. *City and County of San Francisco* (1972) 24 Cal.App.3d 1, 5-6 [100 Cal.Rptr. 757]; *Rader* v. *Thrasher* (1972) 22 Cal.App.3d 883, 887 [99 Cal.Rptr. 670].)

Plaintiff requests an award of attorneys' fees should the judgment be affirmed on appeal.　■　"It is well settled that where a promissory note provides for the recovery of reasonable attorney's fees incurred in the enforcement thereof it includes an allowance for legal services rendered on appeal as well as in the trial court." (*American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 67 [76 Cal.Rptr. 898].) Since we deem the trial court to be better equipped to make a determination of the value of the services rendered by plaintiff's attorneys on appeal, we direct that court to make such a determination upon proper application by plaintiff and to thereafter make the appropriate award. The award shall also include plaintiff's costs on appeal.

The judgment is affirmed with directions as noted.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied December 15, 1978, and the opinion and judgment were modified to read as printed above.