[L. A. No. 5050. In Bank.—November 16, 1920.]

MICHELIN TIRE COMPANY, Appellant, v. GEORGE R. BENTEL et al., Respondents.

[L. A. No. 5051. In Bank.—November 16, 1920.]

MICHELIN TIRE COMPANY, Appellant, v. GEORGE R. BENTEL, Respondent.

[1] SURETIES—CHANGE OF CONTRACT WITHOUT CONSENT—DISCHARGE—APPLICABILITY OF PRINCIPLE.—The principle declared in sections 2819, 2840, and 2844 of the Civil Code that sureties have the

What will release surety, note, 28 Am. St. Rep. 691.

right to stand upon the very terms of their contract, and that if it is changed without their knowledge or consent, they are released from liability, applies to all contracts of suretyship, including undertakings to release attachments.

[2] ID.—UNDERTAKING TO RELEASE ATTACHMENT—AMENDMENT OF COMPLAINT—NONCONSENT OF SURETIES—DISCHARGE FROM LIABILITY.—Sureties on an undertaking to release an attachment are discharged from liability where after the execution of the undertaking the complaint is amended without their consent by stating a new cause of action on certain claims assigned to the plaintiff subsequent to the commencement of the action.

[3] ID.—CHANGE OF CONTRACT—WHEN SURETY NOT DISCHARGED.—A surety is not exonerated from liability by a change in the contract between the principal and the creditor which is made with his consent.

[4] ID.—CONSENT OF SURETY TO AMENDMENT OF COMPLAINT—APPLICATION OF UNDERTAKING TO NEW CAUSE OF ACTION NOT IMPLIED.—A stipulation of a surety on an undertaking to release an attachment permitting the plaintiff to file an amended complaint setting up a new cause of action on claims assigned to it subsequent to the commencement of the action without prejudice to any rights which the defendants may have against the plaintiff, is not to be construed as a consent that the undertaking should be so altered as to cover the new cause of action.

[5] ID.—UNDERTAKING INAPPLICABLE TO NEW CAUSE OF ACTION—LEGAL EFFECT OF ORDER DISCHARGING ATTACHMENT.—Where a complaint was amended after the levy of an attachment by setting up a new cause of action on claims assigned to plaintiff after the commencement of the action, an order discharging the attachment on the ground that defendants were not indebted to plaintiff at the time alleged in the affidavit was an adjudication that the amendment and the stipulation permitting it did not operate to renew the attachment or keep the undertaking alive for the security of the new cause of action.

[6] GUARANTY—RELEASE OF ATTACHMENT—AMENDMENT OF COMPLAINT—EXONERATION OF GUARANTOR.—A guaranty given for the release of an attachment is discharged by an amendment of the complaint setting up a new cause of action on a claim not owned by plaintiff at the time of the commencement of the action.

APPEALS from judgments of the Superior Court of Los Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ward Chapman and L. M. Chapman for Appellant.

H. C. Millsap for Respondents.

SHAW, J.—The above-entitled actions were tried together upon the same evidence. The judgment in each case was for the defendants and the plaintiff has appealed therefrom. They are presented upon the same transcript. Case No. 5050 is upon an undertaking to release an attachment. Case No. 5051 is upon the individual guaranty of Bentel covering the same claim. We will consider them in numerical order.

### L. A. No. 5050.

This is an action upon an undertaking executed by the defendants under the following circumstances: On January 17, 1912, the plaintiff, Michelin Tire Company, a California corporation, began an action to recover money against Coleman & Bentel Company, a corporation, in the superior court. A writ of attachment was duly issued therein. By virtue thereof the sheriff, on or before January 25, 1912, levied upon personal property belonging to Coleman & Bentel Company, and took it into his custody. It was then agreed between the parties that if the undertaking sued on herein were executed, together with a certain bond of George R. Bentel, the plaintiff would release the property from the levy and would not have the writ levied on any other property. Thereupon the undertaking was executed. Therein the said Baldwin, Keating, and Bentel undertook and promised that "in case the plaintiff recovers judgment in said action, defendant will pay to plaintiff the amount of the judgment to be recovered in said action, or that in default thereof, the said sureties will, on demand, pay to plaintiff the amount of said judgment so recovered," not exceeding fifteen thousand dollars, the amount of the undertaking. In consideration thereof the property was released and no further levy was made under the writ.

The theory of the defense is that the undertaking of the sureties was for the payment of any judgment that might be rendered in the action pending at the time it was executed; that afterward, and without their consent, an amended complaint was filed which set forth a new and different cause of action; that the cause then proceeded upon said new cause of action; that the judgment recovered was upon said new cause of action and not upon the cause of action

averred in the original complaint. Upon this the claim is that, as the contract they made as sureties was thereby altered, they are exonerated. (Civ. Code, secs. 2819, 2840, 2844.)

For the better understanding of the question raised it is necessary to state at some length the facts preceding the attachment suit, together with the pleadings and judgment therein.

Two corporations were in existence, both named "Michelin Tire Company," one, plaintiff herein, organized under the laws of California, the other organized under the laws of New Jersey. The California corporation was formed by the stockholders of the New Jersey company for the purpose of acting as agent for the latter company in carrying on and facilitating its California business. The New Jersey corporation was a manufacturer of automobile tires and accessories in New Jersey. It had appointed Coleman & Bentel Company its agent in Los Angeles to sell its goods at that place, under a contract whereby the agent agreed to make to the principal monthly remittances of the amounts received for goods of the principal sold by the agent. From time to time goods were shipped by the New Jersey corporation to Coleman & Bentel Company, some directly to it and some through the medium of the California Michelin Tire Company as its agent, all to be sold in its behalf by said Coleman & Bentel Company. From these sales a debt amounting to a sum over twenty thousand dollars accrued from Coleman & Bentel Company to said New Jersey corporation. The attachment suit was begun by the California corporation on January 17, 1912, as above stated. The complaint then filed alleged that defendant, Coleman & Bentel Company, had entered into a contract with the said Michelin Tire Company of California whereby said Tire Company agreed to supply said defendant with automobile tires and accessories to be sold by the said defendant as the exclusive agent of said plaintiff, the title to said tires to remain in the plaintiff until sold and paid for, and that said defendant should remit to plaintiff each month the amount due to said plaintiff under said agency on account of such sales, and that under said contract there existed a mutual, open, and current account between the plaintiff and defendant upon which there had become due to the plaintiff from said defendant the sum of $22,366.19, which remained unpaid and for which judgment was demanded

in favor of said plaintiff against said defendant. Bentel was also a party to said suit, and with respect to him it alleged that he was the holder of twenty-five thousand shares of stock of said Coleman & Bentel Company, and by reason thereof was liable for a certain portion of said indebtedness, for which judgment was asked against him. It was the action upon this complaint that was pending at the time the undertaking herein sued on was executed and, of course, it was to this action that the undertaking referred, and it was the judgment in this action which the sureties therein undertook and promised to pay.

In truth and in fact the Michelin Tire Company of California had not made any contract with or sold or consigned any goods to Coleman & Bentel Company, the latter had not sold any goods for or on behalf of the former, and was in no wise indebted to it in any sum whatever. The Coleman & Bentel Company had, however, sold tires as agent for the Michelin Tire Company of New Jersey and had become and was indebted to it therefor as before stated. Some time between the execution of this undertaking and the second day of April, 1912, it was discovered by the plaintiff, or its attorneys, that a mistake had been made and that the goods sold by the Coleman & Bentel Company were wholly for the account of and under a contract with the Michelin Tire Company of New Jersey, and that said company was the real creditor to whom said debt was due and with whom the account had accrued. On April 2, 1912, the Michelin Tire Company of New Jersey transferred and assigned to the Michelin Tire Company of California all of its claims as aforesaid against said Coleman & Bentel Company.

An answer to the original complaint was filed in March, 1912, taking issue on the material allegations of the said complaint. These issues never came to trial. They were disposed of in the following manner: In May, 1912, after the aforesaid assignment by the New Jersey corporation to the plaintiff, the attorneys of the plaintiff informed the defendants' attorneys that plaintiff had no cause of action against said defendants at the time the action was begun and that it could not recover in the action. No lawful course was then open to the plaintiff, except to dismiss the action and begin a new action on the claim assigned to it by the New Jersey corporation. Apparently for the purpose of avoiding

such dismissal, a stipulation was then made between the parties. It recited that said plaintiff held no claim against said defendant when the action was begun, but that it had, on April 2, 1912, acquired by assignment the claim of the New Jersey corporation against defendants, and that by reason of these facts it would be necessary to dismiss the action, unless the defendants would permit the plaintiff to file an amended complaint and would waive the objection that said plaintiff was not the owner of the claim, or any claim, against defendants at the time the action was begun. Following this recital was an agreement declaring that the plaintiff was not the owner of the claim sued on at the time the action was begun and that defendants were not, nor was either of them, indebted to plaintiff at that time in any sum whatever; that on April 2, 1912, the plaintiff acquired by assignment the claim of the New Jersey corporation against the defendants and was then the owner thereof, and further agreeing that the plaintiff might file an amended complaint upon the aforesaid assigned claim of the New Jersey corporation and that the objection that the plaintiff was not the owner of the claim at the time of the commencement of the action "shall be for the purposes of the further prosecution of this action waived, in consideration of, and subject to the conditions" expressed in the stipulation, and that no objection to the prosecution of the action would be made by the defendants on the ground that plaintiff was not the owner of the claim when the action was begun. It further declared that the plaintiff waived all costs accrued up to that time. The conditions referred to were that if the defendants, or either of them, desired to sue the plaintiff for damages on account of the beginning of the action, or any proceedings theretofore taken therein, the facts declared in the stipulation should be admitted as true in such action and that with respect to such action the action then pending should be treated as having been dismissed at the date of the stipulation and that the consent of the defendants to the further prosecution of the claim as then held by assignment should be without prejudice to any rights of the defendants, or either of them, against said plaintiff.

Thereupon the plaintiff filed an amended complaint wherein it alleged the accrual of the indebtedness from the defendant, Coleman & Bentel Company, to the New Jersey

corporation for goods sold under the agency above mentioned; its assignment on April 2, 1912, to the plaintiff; its nonpayment, together with the holding by Bentel of a certain portion of the stock in the defendant corporation and his liability as such stockholder. Judgment was asked against the defendant for the full amount of the claim, and against Bentel for his proportion thereof. In the meantime, however, about two thousand dollars had been paid on the New Jersey corporation claim and the amount of the judgment asked was less than in the former complaint by reason of such payment. Upon the trial of the action judgment was given in favor of the plaintiff for the amount found due to the New Jersey corporation and assigned to the plaintiff, as above stated.

[1] There is no escape from the principle declared in the sections of the Civil Code, above cited, that sureties have the right to stand upon the very terms of their contract, and that if it is changed without their knowledge or consent, they are released from liability. It has been frequently stated in our decisions and it applies to all contracts of suretyship. (*First Cong. Church* v. *Lowrey*, 175 Cal. 126, [165 Pac. 440] ; *Bridge* v. *Connecticut etc. Co.*, 167 Cal. 782, [141 Pac. 375] ; *Cadenasso* v. *Antonelle*, 127 Cal. 386, [59 Pac. 765] ; *Tally* v. *Parsons*, 131 Cal. 518, [63 Pac. 833] ; *Glenn Co.* v. *Jones*, 146 Cal. 520, [2 Ann. Cas. 764, 80 Pac. 695].) It applies to undertakings to release attachments. (6 Cor. Jur. 347.) In *Cassidy* v. *Saline Co. Bank*, 7 Ind. Ter. 567, [104 S. W. 838], the court, in discussing this question, said: ''The surety upon a bond given by the defendant to dissolve an attachment takes his obligation with reference to the cause as it then stands; and should the plaintiff afterward so change his pleadings as to make virtually a new action, how can it be said that the surety would have obligated himself under such new order of things? He may have been satisfied that the plaintiff could not recover in the action and may therefore have been willing to give the defendant present relief by signing as his bondsman, though he would not have signed had the suit been well grounded'' (citing Waples on Attachment, sec. 774, and Shinn on Attachment, sec. 306). Accordingly, it was held that an amendment of the complaint changing it from an action by a partnership on account, to which an answer had been filed denying the liability and the

partnership, to an action upon a judgment rendered in another state upon the same account, which, of course, cut off the defenses previously pleaded, changed the conditions of the surety's contract, and, having been made without his consent, released him from liability. In *Quillen* v. *Arnold*, 12 Nev. 244, it was said, per Beatty, J., that although the power to allow amendments "may be and is very liberally exercised, and very properly so, as between the parties to the action in furtherance of justice, it cannot be exercised with the effect of changing the rights and liabilities of third parties." The decision was that an action upon a complaint by John Donahue and Miles Quillen to recover a debt due them on account for goods sold by them as partners was changed by an amendment alleging a debt due to Miles Quillen as surviving partner of a firm composed of Edward Donahue and Miles Quillen and also a debt due to Quillen for goods sold by him after the death of the partner, although the goods and sales referred to in the original complaint were the same as those mentioned in the amended complaint, and, consequently, that the sureties on a bond to release an attachment given prior to the amendment were released from liability thereon by such amendment without their consent. Similar rulings will be found in *Prince* v. *Clark*, 127 Mass. 600, *Freeman* v. *Creech*, 112 Mass. 180, *Bean* v. *Parker*, 17 Mass. 603, *Andre* v. *Fitzhugh*, 18 Mich. 100, *Fullerton* v. *Campbell*, 25 Pa. 345, *Fish* v. *Barbour*, 43 Mich. 26, [4 N. W. 502], and *Mathews Consolidated Slate Co.* v. *Sweeney*, 219 Mass. 285, [106 N. E. 975].

[2] Applying this principle to the present case there can be no doubt that the defendants, Baldwin and Keating, are released from liability on the undertaking. It is conceded that they did not consent to the amendment of the complaint. They were bound only to pay any judgment that could be rendered in the action upon the complaint as it stood when they executed the undertaking. To that action the defendants therein had a perfect defense, that is, that Coleman & Bentel Company had not made the contract with the Michelin Tire Company of California which was alleged in that complaint and were not indebted to said plaintiff. The sureties on the undertaking were then entitled to the full benefit of that defense, and if no amendment had been made there would have been no judgment for them to pay. This condi-

tion of the case was a part of the contract. By the change in the cause of action this defense was taken away, if plaintiff's contention were correct. The plaintiff could not have recovered on the cause of action set up in the amended complaint in an action begun on January 17, 1912, for at that time it was not the owner of the claim. The undertaking they executed did not refer to or embrace that cause of action, and they cannot be held liable for a judgment rendered upon it. The judgment in their favor was correct.

A different question is presented with respect to the liability of the defendant Bentel. He was a party to the action in which the attachment was issued and judgment was asked therein against him on account of his liability as a stockholder. He joined with the other defendant in the answer filed in March, 1912, and they were both represented by the same attorney. The stipulation above mentioned, agreeing to the continuation of the action upon the amended complaint and waiving the objection that the plaintiff was not the owner thereof when the action was begun, was signed by the attorney for both defendants, including Bentel. Consequently, it cannot be claimed that he did not consent to the change in the cause of action. [3] A surety is not exonerated from liability by a change in the contract between the principal and the creditor which is made with his consent. It follows that Bentel was not discharged from liability on the undertaking by reason of such change in the cause of action, if his consent to such amendment can be construed to be an agreement that his previous undertaking should apply to the new action thus authorized.

[4] We do not think the stipulation signed by his attorney can be so construed. The undertaking he signed, as we have said, was, in effect, an agreement that upon the defendants' default in so doing he would pay the judgment that might be rendered in the original action on the cause of action stated in the original complaint. It did not bind him to pay a judgment rendered on any other cause of action substituted afterward for the cause of action sued on. His consent as a party to continue the action upon the newly alleged cause of action is not equivalent to an agreement by him that his original undertaking covering the old debt should be altered so as to cover the different debt set up in the amended complaint. He might have been quite willing

that such amendment should be made, knowing that his contract of suretyship did not cover it and that it would terminate his liability on the undertaking. There is evidence indicating that this fact was known to him. In order to make him liable on the original undertaking for a judgment on the new cause of action, his consent must have been given under such circumstances, or must have been couched in such terms, as to manifest his intent that the original undertaking should stand as security for the newly alleged debt; it must be the equivalent of a new contract by him as surety for such new debt; it must be in effect a consent to the alteration of his contract as surety to conform to the new conditions. In every case in which a surety has been held responsible on a contract which had been altered with his consent after its execution by him, such an agreement changing his contract of suretyship has been either expressed or implied in the argument leading to the conclusion that he was not exonerated. His attorney in the action was authorized to maintain his defense thereto and do such things in his behalf as were proper or necessary for that purpose. To that extent he would be bound by the agreements of the attorney regarding the conduct of the action. But there is no evidence to show that he was employed or authorized by Bentel to make a new undertaking concerning the attachment or to alter or extend the old undertaking and continue it in force for the security of the new debt. It is, therefore, at least doubtful if the stipulation could have been allowed to have such effect if it had expressed such intention.

It does not purport to have that effect. Its import is to the contrary. One of the conditions stated in the stipulation was that the consent to the prosecution by the plaintiff of the newly acquired claim in the old action should be "without prejudice to any rights which the defendants, or either of them, may have" against said plaintiff. This plainly refers to and includes other rights than that of making a defense against the new claim, for that right they would have had without the condition. It therefore included and reserved the right of Bentel, in any suit upon the undertaking for the release of the attachment, to claim in defense thereto that he was not liable thereon for any judgment rendered in the further prosecution of the main action, for that it covered only the cause of action originally alleged and which would

be, in effect, abandoned by the amendment to the complaint to which he was consenting. Consequently, it did not alter the undertaking so as to make it apply to the new cause of action.

[5] That it cannot be so construed was, in effect, adjudged by the court during the subsequent proceedings in that action. In December, 1913, after the amendment of the complaint, the defendants therein moved to discharge the attachment for the release of which said undertaking had been given, on the ground that the affidavit given by the plaintiff to procure the attachment, in so far as it alleged that the defendants were then indebted to plaintiff or that said defendants had made any contract with the plaintiff, was false, and that in fact no such contract had ever been made and no such indebtedness then existed as alleged in said affidavit, and that said defendants were not at that time indebted to the plaintiff in any sum whatever. The motion came on for hearing in January, 1914, upon affidavits showing the making of the undertaking, the amendment of the complaint and other facts relating thereto, and thereupon the court granted the motion and made an order discharging the attachment. This order was not appealed from and it has become final. It was, in effect, an adjudication that the amendment of the complaint and the stipulation made consenting to it did not operate to renew the attachment or keep the undertaking alive for the security of the new cause of action. The plaintiff is bound by this adjudication and cannot be permitted now to assert the contrary. (*Bash* v. *Howald* (Okl.), 157 Pac. 1156; Freeman on Judgments, sec. 323; *Commissioners* v. *McIntosh,* 30 Kan. 234, [1 Pac. 572]; *Boylan* v. *Bock,* 60 Wash. 423, [111 Pac. 454]; *Lake* v. *Bonynge,* 161 Cal. 120, 129, [118 Pac. 535].)

For these reasons we conclude that the court below was correct in rendering judgment in favor of the defendant Bentel.

The judgment in case No. 5050 is affirmed.

### L. A. No. 5051.

This action is upon a guaranty given by the defendant, Bentel, for the purpose of obtaining the release of the attachment hereinbefore mentioned. It was given simultaneously with and in the same action as the undertaking sued on in appeal No. 5050. At the time the attachment was issued a

levy was made, not only on the property of Coleman & Bentel Company, but also upon several parcels of real property belonging to Bentel. The guaranty signed by Bentel alone was made in pursuance of the same negotiations for the release of the attachment which led to the execution of the undertaking. Bentel's agreement recited that the defendants were desirous of substituting for the attachments a bond for the release thereof and that plaintiff had agreed to accept such bond on condition that Bentel "shall personally guarantee the payment of any judgment that may be obtained in this action on the account sued upon, and personally guarantee the payment of whatever amount is actually due the plaintiff from the defendant Coleman & Bentel Company." The agreement then followed, stating that in consideration of the release of the attachment and the surrender of certain uncollected accounts previously pledged to the plaintiff, the said Bentel "does hereby guarantee the payment of any judgment that may be obtained in this action against the defendants or either of them, and personally promises to pay whatever amount is found to be due to the plaintiff from the defendants."

It will be seen that the language of this instrument, executed as it was on January 25, 1917, eight days after the beginning of the action and prior to any amendment of the complaint therein, necessarily referred solely to the cause of action set forth in the complaint as it then stood. It therefore contains no promise to pay any judgment rendered upon some other and different cause of action. Bentel had a right to insist that the case should stand as it then was, in which event, since, as we have shown, the plaintiff then had no cause of action against the defendants, or either of them, and could not recover any judgment against either of them, Bentel would never have become liable to the plaintiff upon his guaranty for any sum whatever. The subsequent amendment of the complaint in pursuance of the stipulation to which we have already referred expressly reserved any right which Bentel had against the plaintiff. This, as we have said with reference to his obligation upon the undertaking, included his right to defend any action upon this guaranty on the ground that it did not cover or make him liable for any judgment that might be rendered in the newly alleged cause of action set up in the amended complaint in pursuance

of the consent given in the stipulation upon the conditions therein stated.  **[6]**  For reasons similar to those set forth with respect to the undertaking the conclusion necessarily follows that Bentel was not liable upon this guaranty for the judgment subsequently rendered in the new action to which the guaranty did not relate.

The judgment in case No. 5051 is affirmed.

Olney, J., Lennon, J., Angellotti, C. J., Lawlor, J., and Sloane, J., concurred.