[Civ. No. 43004. Second Dist., Div. Four. Aug. 21, 1974.]

SOUTHERN CALIFORNIA FIRST NATIONAL BANK,
Plaintiff and Appellant, v.
HOWARD OLSEN et al., Defendants and Respondents.

## COUNSEL

Good, Potter & Bradish and William L. Kelley for Plaintiff and Appellant.

Frederick J. Kling for Defendants and Respondents.

## OPINION

**DUNN, J.**—Plaintiff, Southern California First National Bank, appeals from a judgment entered in favor of defendants Howard Olsen and Lee Olsen, and against plaintiff, in an action to enforce a continuing guaranty of indebtedness executed by the Olsens.

On March 10, 1969, plaintiff filed a complaint to recover the principal sum of $13,000, plus interest thereon. Named as defendants were Kaspar Burgi Co., Inc., James Cowan, Juanita Burgi, Howard Olsen and Lee Olsen. The complaint alleged: On October 18, 1967, defendants Olsen executed a continuing guaranty in favor of plaintiff, promising to pay all indebtedness to plaintiff incurred by defendant Kaspar Burgi Co., Inc., not to exceed $20,000; on December 4, 1968, Kaspar Burgi Co., Inc., executed its promissory note in favor of plaintiff for the principal sum of $13,000; the note matured January 28, 1969, and bore interest of 8 percent per annum from October 20, 1968, until paid; defendants James Cowan and Juanita Burgi endorsed the note as guarantors; no part of the principal or interest of the note has been paid.

In their answer to the complaint, defendants Olsen alleged, as an affirmative defense, that they had revoked their continuing guaranty before the promissory note was executed. Defendants James Cowan and Juanita Burgi stipulated that judgment be entered against each of them, and in favor of plaintiff.[1] Defendant Kaspar Burgi Co., Inc., did not answer the complaint, and its default was entered by the clerk.[2]

The cause was tried by the court, sitting without a jury. Evidence was presented showing circumstances as follows:

Defendant Howard Olsen was a member of the board of directors of defendant Kaspar Burgi Co., Inc., which was in the business of landscape construction. In 1967 the company entered into a contract for landscaping at Busch Gardens in Los Angeles County. In performing this contract, the company was obliged to borrow money from time to time in order to meet its payroll. In October 1967 defendant James Cowan, then president of the company, arranged to borrow $20,000 from plaintiff bank for this purpose. Cowan telephoned Olsen and told him that the bank required the signature of a director of the company in connection with the loan. Olsen agreed to sign the necessary papers. On October 18, 1967, Cowan went to Olsen's office "with all the loan papers stacked together." Cowan asked Olsen and his wife, defendant Lee Olsen, to sign one of the papers. They did so, without reading what they signed. At the request of plaintiff, the Olsens also furnished a financial statement.

The document which the Olsens signed was entitled "Continuing Guaranty" (see Civ. Code, § 2814) and provided in part: "For valuable consideration, the undersigned (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay to the Southern California First National Bank . . . any and all indebtedness of KASPAR BURGI CO., INC. (hereinafter called Borrowers) to Bank. The word 'indebtedness' is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers . . . heretofore, now, or hereafter made, incurred or created . . . and said word 'indebtedness' also includes all renewals and extensions of any and all such advances, debts, obligations and liabilities . . . this continuing guaranty being also intended by the undersigned to induce said Bank, if and when it shall deem it proper, to grant and accept such renewals and ex-

---

[1]Defendants Howard Olsen and Lee Olsen filed a cross-complaint against defendants James Cowan and Juanita Burgi. The cross-complaint was dismissed on motion of the cross-complainants.

[2]For reasons not explained by the record, judgment apparently was not entered against Kaspar Burgi Co., Inc., Juanita Burgi or James H. Cowan.

tensions . . . . ¶ The liability of Guarantors shall not exceed at any one time the sum of . . . $20,000.00 . . . . This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions . . . . ¶ Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon. . . ."

The loan of $20,000 to Kaspar Burgi Co., Inc., was made by plaintiff on October 18, 1967. The loan was evidenced by a promissory note of the company for $20,000 dated October 20, 1967, and payable December 19, 1967, with interest of 7½ percent per annum from date until paid.

In December 1967 an officer of plaintiff bank requested Howard Olsen to furnish a new financial statement in connection with a renewal of the note covered by the continuing guaranty. It was then that the Olsens first learned they had signed a continuing guaranty. They refused to furnish a financial statement, and did not consent to renewal of the note. The bank officer informed them that plaintiff nevertheless would hold them to their continuing guaranty because they "hadn't bothered to deny it in writing." In response to this statement Howard Olsen, on December 19, 1967, typed and sent to plaintiff a letter which stated in part: "What Lee and I had signed, we thought, was an acknowledgment that we were on the Board of Directors of the Burgi Co. Jim [Cowan] had brought down a whole package of papers in a rush stating he just needed the signature of another Board member to get the loan; and until you called, I did not realize what we had signed. ¶ So, as you insisted, this is your notice in writing to cancel the papers you have as we will not be responsible for any debts of the Burgi Co."

The promissory note of October 20, 1967, was renewed December 29, 1967, and approximately every 60-90 days thereafter. From time to time the principal sum of the indebtedness was reduced and the rate of interest thereon increased. The final renewal note was dated December 4, 1968, payable January 28, 1969, in the principal sum of $13,000, with interest thereon of 8 percent per annum until paid.

The renewal note of December 4, 1968, was not paid. After their revocation of December 19, 1967, the Olsens heard nothing from plaintiff

bank concerning their continuing guaranty until February 1969, when they received a letter from plaintiff demanding payment of the principal sum of $13,000, plus interest of $369.76, pursuant to the guaranty.

Findings of fact and conclusions of law were signed and filed. The trial court found as facts: on or about October 18, 1967, defendants Howard Olsen and Lee Olsen, in consideration of a loan by plaintiff to defendant Kaspar Burgi Co., Inc., guaranteed the payment of said loan by executing the continuing guaranty; on or about October 18, 1967, Kaspar Burgi Co. executed and delivered to plaintiff its promissory note in the sum of $20,000; on December 19, 1967, Howard Olsen met with a loan officer of plaintiff and orally informed him that Howard Olsen and Lee Olsen would not agree to a renewal of the note, and would not be further bound on their continuing guaranty; on December 19, 1967, Howard Olsen typed a letter to plaintiff on behalf of himself and Lee Olsen, with her knowledge and consent, stating that they would not be further bound on their continuing guaranty and revoking the same; Howard Olsen mailed the letter and plaintiff received it; thereafter, plaintiff created new indebtedness in future transactions with Kaspar Burgi Co., including the increasing of the interest rate on the obligation of the company; all of the promissory notes of Kaspar Burgi Co., Inc., in favor of plaintiff which were executed after December 19, 1967 (including the note of December 4, 1968, upon which this action was brought) represented indebtedness created after plaintiff received actual written notice of the revocation by the Olsens of their continuing guaranty.

As a conclusion of law, the court determined that the creation of new indebtedness between plaintiff and Kaspar Burgi Co., Inc., and specifically the note here sued on, released the Olsens from liability to plaintiff under the terms of the continuing guaranty executed by them. Judgment was entered in favor of defendants Olsen and against plaintiff. Plaintiff appeals from the judgment.

The trial court determined that the Olsens were released from liability under their continuing guaranty because: (1) the rate of interest in the renewal notes was increased beyond the rate of interest in the original note; and (2) the renewals of the note constituted the creation of indebtedness for which the Olsens were not responsible following revocation of their continuing guaranty.[3] In view of the provisions of the guaranty,

---

[3]Plaintiff contends the trial court erred in denying plaintiff's motion to reopen the case for presentation of further evidence purportedly showing that plaintiff did not receive defendants' letter of revocation.

these circumstances terminated defendants' liability. Civil Code section 2819 provides: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect . . . ."[4] ■ An increase in the rate of interest on an obligation constitutes an alteration within the meaning of this provision, and the surety is thereby exonerated if such an increase is made without his consent. (*Nissen* v. *Ehrenpfort* (1919) 42 Cal.App. 593, 594-595 [183 P. 956].) ■ A surety is not exonerated from liability by a change in the contract between the principal and the creditor which is made with his consent (*Michelin Tire Co.* v. *Bentel* (1920) 184 Cal. 315, 323 [193 P. 770]), and such consent may be given in advance of the alteration of the principal's obligation as well as at or after the time of such act. (*Bloom* v. *Bender* (1957) 48 Cal.2d 793, 801 [313 P.2d 568].)

The continuing guaranty provided: "Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to . . . change the terms of the indebtedness . . . including increase . . . of the rate of interest thereon." As shown by this provision, defendants plainly gave advance consent to an increase in the rate of interest on the obligation of Kaspar Burgi Co., Inc., to plaintiff. However, distinguishing this case from *Bloom*, cited *supra*, is the fact defendants revoked their guaranty, under the clause reading: "This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions. . . ." The creation of a new note at a new interest rate was a "future transaction" and the trial court found the bank received notice of revocation. ■ Under the foregoing circumstances, *Bloom* does not state a principle governing the outcome here for it is the general rule that a continuing guaranty does not cover renewals, after revocation, of obligations which were covered by the guaranty at the time of revocation. (*Straus-Frank Co.* v. *Hughes* (1941) 138 Tex. 50 [156 S.W.2d 519]; *Bank of United States* v. *Andron* (1934) 155 Misc. 21 [277 N.Y.S. 594, 597-598]; *Clark* v. *Anderson* (1923) 123 Me. 165 [122 A. 337]; *Merchants' Nat. Bank of Cedar Rapids* v. *Cressey* (1914) 164 Iowa 721 [146 N.W. 761, 765]. Contra: *Corn Exchange Bank Trust Co.* v. *Gifford* (1935) 268 N.Y. 153 [197 N.E. 178];

The record on appeal contains neither the motion, the supporting affidavits nor the order denying the motion. Therefore, we are unable to consider the contention.

[4]See *Sumitomo Bank of Calif.* v. *Iwasaki* (1968) 70 Cal.2d 81 [73 Cal.Rptr. 564, 447 P.2d 956].

There is no distinction between sureties and guarantors in California, and contracts of guaranty are subject to all provisions of the law relating to suretyship. (Civ. Code, § 2787; *Bloom* v. *Bender* (1957) 48 Cal.2d 793, 797, 798 [313 P.2d 568].)

*Exchange Nat. Bank of Spokane* v. *Hunt* (1913) 75 Wash. 513 [135 P. 224]. See also 38 Am.Jur.2d 1065, Guaranty, § 64; Annot. 100 A.L.R. 1236 et seq.)

■ While a surety cannot be held beyond the express terms of his contract, the contract is to be interpreted by the same rules used in construing other types of contracts, with a view toward effectuating the purpose for which the contract was designed. (*U.S. Leasing Corp.* v. *du Pont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65].) ■ It is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citation], or a determination has been made upon incompetent evidence [citation]. Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].)

Since there is no conflict in the extrinsic evidence in this case, the trial court's construction of the guaranty is not binding, and we must make an independent determination of its meaning.

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) It is also a rule of construction that a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting. (Civ. Code, § 1636.) ■ The guaranty states that it is intended to induce plaintiff to grant renewals of the obligations of the borrower. However, renewals granted after notice of revocation is received are not permitted. Under the terms of the guaranty, defendants are relieved of liability as to any indebtedness created after the plaintiff has received written notice of revocation of the guaranty as to future transactions.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 17, 1974. Mosk, J., did not participate therein.