**WALTER E. HELLER WESTERN IN-CORPORATED, a California corporation, Plaintiff and Appellant,**

v.

**U.S. ROCK WOOL COMPANY, INC., a Utah corporation; V. Ross Ekins; S.O. Ekins, et al., Defendants and Respondents.**

No. 880071–CA.

Court of Appeals of Utah.

Oct. 14, 1988.*

Cary D. Jones, John T. Anderson (argued), Hansen & Anderson, Salt Lake City, for plaintiff and appellant.

Earl D. Tanner (argued), Earl D. Tanner, Jr., Brad L. Englund, Tanner, Bowen & Tanner, Salt Lake City, for defendants and respondents.

Before BENCH, BILLINGS and ORME, JJ.

OPINION

BENCH, Judge:

Plaintiff appeals from a trial court judgment refusing to enforce defendants' per-sonal guaranty and to foreclose on defendants' trust deed. We reverse and remand.

Plaintiff Walter E. Heller Western Incorporated (Heller) is a California factoring company. Defendant U.S. Rock Wool (Rock Wool) is a Utah corporation which manufactures and sells insulation. Defendants V. Ross Ekins and S.O. Ekins, husband and wife, are the controlling shareholders and president and secretary of Rock Wool respectively. In October 1979, Mr. Ekins negotiated with agents of Heller to obtain accounts receivable financing for Rock Wool. After several meetings and a review of Rock Wool's financial records, Heller agreed to provide the requested financing. Rock Wool executed three security agreements which granted Heller a general lien and security interest in Rock Wool's accounts receivable, inventory, equipment, and other assets. As additional security, Heller required the Ekinses to execute a personal guaranty on the loan secured by a trust deed to their home. The parties executed a loan agreement dated December 27, 1979. Heller perfected its security interest in all but Rock Wool's motor vehicles.

In May 1981, the Ekinses negotiated a separate loan from Valley Bank & Trust Company (Valley Bank). As a condition to the loan, Valley Bank required that Heller subordinate its trust deed on the Ekinses' home to a trust deed lien granted to Valley Bank. Under the subordination agreement, Heller agreed not to act on its lien until Valley Bank was paid in full.

Rock Wool's financial condition deteriorated in 1982, and Heller responded with limitations on lending. In early 1983, Heller's auditors discovered the accounts receivable schedule submitted by Rock Wool understated the age of each account by one month. Therefore, acting within the loan agreement, Heller sent notices to all Rock Wool account debtors to remit directly to Heller. The effect of the notices was to discourage payments by existing customers.

* Editor's Note: Publication of this opinion was delayed after rehearing had been granted. Based upon stipulation of the parties, the re-hearing was later dismissed. The opinion is therefore published here in its original form.

Heller filed this action in March 1983 to foreclose on the trust deed and its security interest in Rock Wool's assets, seeking to recover a principal sum in excess of $116,700 plus interest, costs, and attorney fees. Heller filed an amended complaint to reduce the principal amount requested and to add a claim for a judgment on the Ekinses' personal guaranty. After Rock Wool filed for bankruptcy under Chapter 11, Heller obtained an order granting it relief from the automatic stay arising under 11 U.S.C. § 362. A four day trial ensued.

In its findings, conclusions, and judgment, the trial court found in favor of the Ekinses and awarded them attorney fees in the amount of $63,700. The court found Heller's failure to perfect its security interest in Rock Wool's motor vehicles impaired that security. Heller was also found to have impaired its security interest in Rock Wool's accounts receivable and inventory by "cutting off the cash available to Rock Wool and by giving notice to the account debtors to stop or slow down the payment of their accounts and quit doing business with Rock Wool, which eventually destroyed Rock Wool as an operable going concern." Applying California law, the court found the Ekinses neither consented to Heller's impairment of the security nor waived their right to object to such impairment. The trial court also found Heller violated its duty under California law to collect accounts receivable security in a commercially reasonable manner. According to the trial court, Heller breached its obligation of good faith by unilaterally changing operating rules, by sending notices based on known obsolete balances, and by foreclosing on the trust deed contrary to the provisions of the subordination agreement.[1] The court concluded the Ekinses had been released from liability under their guaranty.

On appeal, Heller argues the trial court erred in finding the Ekinses did not consent to its impairment of the security. Heller claims the Ekinses explicitly waived the defense of impairment of collateral under their personal guaranty and that the trial court's failure to interpret the guaranty in this manner constitutes reversible error. Questions of contract interpretation, such as this, are questions of law to which we owe no deference but review for correctness. *Ted R. Brown and Assocs. v. Carnes Corp.*, 753 P.2d 964 (Utah App. 1988). In this case, the personal guaranty, by its own terms, was to be governed by California law. "It is well-settled that parties are permitted to select the law that will govern the validity and effect of their contract." *Engel v. Ernst*, 724 P.2d 215, 216 (Nev.1986).

The applicable provision of California law, Cal.Civ.Code § 2819 (West 1974), states:

A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, [are] in any way impaired or suspended.

A "logical corollary" to section 2819 is "where the surety consents to ... the impairment or suspension of the creditor's rights or remedies against the principal, the surety is not exonerated." *Bloom v. Bender*, 48 Cal.2d 793, 313 P.2d 568, 572 (1957). Such consent may be given prior to impairment of the creditor's rights or remedies and must be unequivocally expressed. *Southern California First Nat'l Bank v. Olsen*, 41 Cal.App.3d 234, 116 Cal.Rptr. 4 (1974); *D.W. Jaquays & Co. v. First Sec. Bank*, 101 Ariz. 301, 419 P.2d 85 (1966). Heller admits it failed to perfect its security interest in Rock Wool's motor vehicles. However, Heller contends that by the unequivocal language of their unconditional personal guaranty, the Ekinses consented to any impairment of collateral by Heller.

*American Security Bank v. Clarno*, 151 Cal.App.3d 874, 199 Cal.Rptr. 127 (1984), is

---

**1.** In December 1983, Heller's legal counsel tendered a check for $55,000 to Valley Bank under the terms of the subordination agreement. At the Ekinses' request, Valley Bank refused to accept that check.

controlling. In *Clarno*, defendants, sole shareholders of a corporation, guaranteed the corporation's note to plaintiff bank by executing continuing guaranties secured by trust deeds on their homes. The corporation's wholly-owned subsidiary also pledged its assets as security for the loan. The bank failed to perfect its security interest in the subsidiary's assets. In order to collect on its note, the bank filed an action against defendants to enforce their guaranties. The guaranties allowed the bank, in part:

(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement; (c) To forbear from calling for additional collateral to serve any of the Liabilities or to secure any obligation comprised in the collateral; (d) To consent to the substitution, exchange, or release of all or any part of the collateral. . . .

*Id.* at 130.

In that case, the trial court found in favor of defendants, releasing them from their guaranties due to the bank's failure to perfect its security interest. The appellate court reversed the decision of the trial court regarding defendants' liability under their guaranties. The court stated, "No case requires a creditor to acquire every bit of security possible prior to imposing liability on a surety." 199 Cal.Rptr. at 133. The court held defendants' guaranties constituted a clear waiver of their rights under section 2819.

In the instant case, the guaranty executed by the Ekinses in part provides:

The undersigned . . . waive notice of any consents [sic] to the granting of indulgence or extension of time payment, the taking and releasing of security in respect of any said receivables, agreements, obligations, indebtedness or liabilities so guaranteed hereunder, or your accepting partial payments thereon or your settling, compromising or compounding any of the same in such man-

ner and at such times as you may deem advisable, without in any way impairing or affecting our liability for the full amount thereof; and you shall not be required to prosecute collection, enforcement or other remedies against the Debtor or against any person liable on any said receivables, agreements, obligations, indebtedness or liabilities so guaranteed, or to enforce or resort to any security, liens, collateral or other rights or remedies thereto appertaining, before calling on us for payment; nor shall our liability in any way be released or affected by reason of any failure or delay on your part so to do.

This guaranty is absolute, unconditional and continuing. . . .

The Ekinses argue that while the guaranty in *Clarno* consented to the release of collateral, the guaranty in the instant case only waived notice of the release of security and did not consent to release or impairment of the security. This argument is unpersuasive. By providing that notice of the release of the security is waived, the guaranty necessarily assumes Heller was free to release the security. Notice of the release of security is relevant only if there is a right to release security.

In any event, as in *Clarno*, the clear and unequivocal language of the guaranty indicates that the Ekinses waived the taking and releasing of security: "You [Heller] shall not be required . . . to enforce or resort to any security, liens, collateral or other rights or remedies thereto appertaining, before calling on us for payment." It would be anomalous, indeed, to conclude that Heller was obligated to perfect its security interest in collateral while not requiring Heller to concern itself with such collateral upon default. Thus, Heller did not obligate itself under the guaranty to perfect its security interest in Rock Wool's motor vehicles. When read as a whole, the guaranty unequivocally waives all rights of the guarantor to require that the creditor move first against security or collateral.[2]

Heller next argues that the trial court erred in finding Heller breached its obli-

---

**2.** Our decision applying California law is in harmony with Utah case law. *See, e.g., Valley*

*Bank and Trust Company v. Rite Way Concrete Forming, Inc.,* 742 P.2d 105 (Utah App.1987) (an

gations to act in good faith and in a commercially reasonable manner. Heller failed to provide a trial transcript in the record on appeal. Absent a transcript, we must presume the trial court's findings are based on admissible, competent, substantial evidence. *Burke v. Burke*, 733 P.2d 498 (Utah 1986). However, the challenged findings pertain only to the loan agreement between Rock Wool and Heller. Heller's obligations thereunder are not conditions to the Ekinses' liability under their unconditional guaranty. We conclude that findings as to bad faith under the loan agreement are not pertinent to the question of liability on the personal guaranty.

The judgment in favor of the Ekinses is reversed, and the award of attorney fees is vacated. The case is remanded with instructions to the trial court to enter judgment for Heller in the amount of Rock Wool's indebtedness plus interest, costs, and attorney fees.

BILLINGS and ORME, JJ., concur.

absolute guarantor may consent to the impairment of collateral, and such waiver may be given in advance in the guaranty agreement provided it is explicit and unequivocal). *See also Continental Bank & Trust Co. v. Utah Sec. Mortgage, Inc.*, 701 P.2d 1095 (Utah 1985).