79 F.3d 1152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paula BASS; Gary Singer, as Co-Executors of the Estate of
Arthur C. Bass, Plaintiffs-Appellees,
v.
FIRST PACIFIC NETWORKS, INC., a Delaware corporation,
Defendant-Appellant;
and
St. Paul Fire & Marine Insurance Company, as surety to
defendants, Appellant.
 Nos. 94-17083, 95-15053.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1996.
Decided March 14, 1996.
 
 Before: HUG, Chief Judge, HALL, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 St. Paul Fire and Marine Insurance Company, surety for First Pacific Networks, Inc., appeals the district court's order granting the motion of the executors of Arthur Bass's estate, (Bass) to enforce a supersedeas bond against St. Paul arising out an underlying action brought by Bass against First Pacific. We affirm.
 
 1. The Stock and its Value
 
 3
 "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required." Pacific Reinsurance v. Ohio Reinsurance, 935 F.2d 1019, 1027 (9th Cir.1991) (quotation omitted). First Pacific posted the supersedeas bond via St. Paul. The bond specifically stated that the extent of coverage was $3,721,436.25 for 367,390 shares.
 
 
 4
 During the course of litigation, both of the parties have made inconsistent statements regarding the amount of stock covered by the $3.7 million amount. Of course, the question is whether the district court erred when it, in effect, interpreted its order to mean that it had set the bond at an amount that it determined was the value per share for 367,930 shares.[1] A review of the evidence and the arguments of the parties indicates that the record could lead to contrary conclusions. However, it was certainly a fair inference that the district court was referring to the block of shares which was deposited in court and that it sought to value that block for the purpose of determining the least that Bass would recover regardless of fluctuations in value over time. That is underscored by the fact that St. Paul issued its bond for only that number of shares and it would be middling strange to set the penal amount of the bond at a level much higher than the value of the shares themselves. The district court did not abuse its discretion when it interpreted its order.[2]
 
 2. Exoneration of the Bond
 
 5
 a. Stipulated dismissal of appeal:
 
 
 6
 St. Paul argues that the settlement agreement between Bass and First Pacific exonerated the bond because the bond could only be triggered by a dismissal by the court on the merits, or a judgment in favor of Bass. We disagree. The case law does not support that argument.
 
 
 7
 " 'A surety cannot be held beyond the express terms of [the] contract.' " ITT Diversified Credit Corp. v. Highlands Ins. Co., 191 Cal.App.3d 301, 308, 236 Cal.Rptr. 433, 438 (1987) (quoting Southern Cal. First Nat'l Bank v. Olsen, 41 Cal.App.3d 234, 241, 116 Cal.Rptr. 4, 8-9 (1974)). California Civil Code section 2837 mandates that "[i]n interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts." See also Airlines Reporting Corp. v. United States Fidelity and Guaranty Co., 31 Cal.App. 4th 1458, 1461, 37 Cal.Rptr.2d 563, 565 (1995); Southern Cal. First Nat'l Bank v. Olsen, 41 Cal.App.3d 234, 240-41, 116 Cal.Rptr. 4, 8-9 (1974). In determining the proper interpretation of the documents' language, the court must ascertain the intent of the parties. Id.
 
 
 8
 A surety is liable upon its undertaking even if the appeal is dismissed by the principal's consent. See Hitchcock v. Caruthers, 100 Cal. 100, 103, 134 P. 627, 628 (1893); Chase v. Beraud, 29 Cal. 138 (1865). "Whether ... the dismissal of an appeal is to be deemed equivalent to an affirmance of the judgment, will depend upon the question whether, after such a dismissal, the judgment can be again open to examination; and upon this question the rules of the Court give the answer." Karth v. Light, 15 Cal. 324, 326 (1860); see also Chamberlain v. Reed, 16 Cal. 208, 208 (1860). Here the appeal was dismissed by consent and the judgment was "no longer open for review." Chase, 29 Cal. at 139. St. Paul is still bound.
 
 
 9
 b. Material alteration of St. Paul's obligation
 
 
 10
 St. Paul argues that the settlement agreement exonerated the bond because it materially altered St. Paul's obligations under the bond without its consent. See Cal.Civil Code § 2819; see also id. § 2824; Common Wealth Ins. Sys., Inc. v. Kersten, 40 Cal.App.3d 1014, 1029, 115 Cal.Rptr. 653, 663 (1974); Bloom v. Bender, 48 Cal.2d 793, 801-03, 313 P.2d 568, 573-74 (1957).
 
 
 11
 It asserts that First Pacific agreed to pay a higher sum and therefore increased St. Paul's exposure. However, the assertion is incorrect. Pursuant to the parties' agreement, St. Paul was not to be asked to pay any amount whatever unless the stock was sold for less than $10.11 per share. That is precisely what it had agreed to do, and its exposure was not increased one whit. Of course, if the district court had determined that the bonded value per share was lower, the parties' agreement could not have increased it. That did not occur. Thus the settlement agreement did not increase St. Paul's obligations.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 If the district court had decided a question of law--such as, is execution on the bond premature or was an injunction wrongful--we would review de novo. See Nintendo of Am., Inc. v. Lewis Galoob Toys, 16 F.3d 1032, 1036 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994). Had the district court interpreted a "consent decree," we would apply contract review principles and review de novo. It did not. See Gates v. Gomez, 60 F.3d 525, 530 (9th Cir.1995); United States v. Gila Valley Irrigation Dist., 961 F.2d 1432, 1434 (9th Cir.1992). Findings regarding the computation of damages are reviewed for clear error. Nintendo of Am., Inc., 16 F.3d at 1036. To the extent that the district court's construction of its own order in this case is a mixed question of fact and law, it is of the variety that is uniquely within the ken of the district court. We review, therefore, for clear error. See United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Some courts have applied an abuse of discretion standard to a district court's interpretation of its own order. See, e.g., Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir.1995) (per curiam). At any rate, clear error and abuse of discretion are companion standards in this context. See United States v. Gayou, 901 F.2d 746, 748 n. 2 (9th Cir.1990)
 
 
 [2]
 The district court concluded that St. Paul had waived the right to raise the valuation issues. Waived or not, the district court's construction of the order was still appropriate